ORIGINAL



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUN 15 2006

CLERK, U.S. DISTRICT COURT

By _____
          **Deputy**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE §
COMMISSION §
                    §
v.              §
                    §
GREGORY BRADY, ET. AL. §

Civil Action No. 3:05-CV-1416-D

---

## APPENDIX IN SUPPORT OF RESPONSE OF THE i2 AUDIT COMMITTEE AND BAKER BOTTS TO BRADY'S MOTION TO COMPEL AND BRIEF IN SUPPORT

---

Pursuant to Northern District of Texas Local Rule 7.2, the i2 Audit Committee and Baker Botts file this Appendix in Support of the Respone of the i2 Audit Committee and Baker Botts to Brady's Motion to Compel and Brief in Support.

| **DESCRIPTION** | **PAGE** |
|---|---|
| June 15, 2006 Affidavit of Craig N. Adams in Support of Response to Brady's Motion to Compel | 1-5 |
| September 19, 2005 Affidavit of Craig N. Adams | 6-10 |
| December 11, 2003 Letter from David L. Peavler to Joseph Cialone, II | 11 |
| January 15, 2004 Letter from Joseph Cialone, II to Edward Koppman | 12 |
| July 13, 2004 Letter from Edward Koppman to Craig Adams | 13-14 |
| May 3, 2006 Letter from Joseph Cialone, II to Edward Koppman | 15-16 |
| May 9, 2006 Letter from Edward Koppman to Joseph Cialone, II | 17-20 |
| i2 Form 10-Q for period ending September 30, 2002 | 21-24 |
| January 29, 2003 Baker Botts Power Point Presentation | 25-27 |
| May 28, 2003 Confidentiality Agreement between i2 and SEC | 28-29 |

| | |
|---|---|
| June 15, 2006 Affidavit of Gail Foster in Support of Response to Brady's Motion to Compel | 30-31 |
| June 15, 2006 Affidavit of Stuart L. Cochran in Support of Response to Brady's Motion to Compel | 32-34 |
| The Audit Committee of i2 Technologies, Inc.'s Objections to Subpoena Duces Tecum | 35-46 |
| Baker Botts L.L.P.'s Objections to Subpoena Duces Tecum | 47-54 |
| July 15, 2005 Complaint Against Brady, Beecher, and Lancaster | 55-111 |
| i2 Form 10-K for fiscal year ended December 31, 2002 | 112-115 |
| November 20, 2003 Definitive Proxy Statement of i2 Technologies, Inc. | 116-119 |
| Royal Ahold's Form 20-F for the fiscal year ended December 29, 2002 | 120-128 |

Dated:  June 15, 2006

Respectfully submitted,

BAKER BOTTS L.L.P.

_____
Timothy S. Durst
State Bar No. 00786924
Stuart L. Cochran
State Bar No. 24027936
2001 Ross Ave.
Dallas, TX 75201
P:  (214) 953-6500
F:  (214) 953-6503

ATTORNEYS FOR THE
i2 AUDIT COMMITTEE

**APPENDIX IN SUPPORT OF RESPONSE OF THE i2 AUDIT COMMITTEE AND BAKER BOTTS TO BRADY'S MOTION TO COMPEL AND BRIEF IN SUPPORT  - PAGE 2**
DAL01:910640.1

## CERTIFICATE OF SERVICE

I certify that on May 30, 2006, I served this document by:

**HAND DELIVERY**

**ELECTRONIC MAIL AND
CERTIFIED MAIL**

Edward S. Koppman
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue., Suite 4100
Dallas, TX 75201

Toby M. Galloway
Securities and Exchange Commission
Fort Worth District Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102

R. Matthew Pittman

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| v. | § § | Civil Action No. 3:05-CV-1416-D |
| GREGORY BRADY, ET. AL. | § § § | |

### AFFIDAVIT OF CRAIG N. ADAMS IN SUPPORT OF
### RESPONSE TO BRADY'S MOTION TO COMPEL

1    My name is Craig N. Adams. I am a partner with the law firm of Baker Botts

LLP, and I am authorized to make this affidavit. All facts in this affidavit are stated based either

on my personal knowledge or documents that Baker Botts has retained during the course of its

representation of the Audit Committee of i2 Technologies, Inc.

2    I hereby reaffirm and incorporate my earlier affidavit in <u>Kmart Corp. v. i2</u>

<u>Technologies, Inc., et al.</u>, dated September 19, 2005 and filed in the District Court of Dallas

County, Texas, 44th Judicial District, into this affidavit with one exception: Paragraph number

thirteen of my previous affidavit contains the following error regarding the date of the

confidentiality agreement with the SEC: the first sentence, which reads, "On March 28, 2003,"

should read, "On May 28, 2003."

3    As described in paragraph three of my previous affidavit, prior to Baker Botts'

retention by the i2 Audit Committee, a purported shareholder derivative suit was filed against i2

in April 2001 and separately on April 23, 2001, seventeen class action lawsuits against i2 were

consolidated for pretrial purposes. Subsequently, in September and October 2001, a former

1

officer of i2 threatened litigation and made allegations which overlap in part with topics alleged in the aforementioned lawsuits, including accounting practices at i2.

4       The first phase of Baker Botts' investigation and the resulting report to the Audit Committee ("Report"), described in detail in paragraphs five through seven of my previous affidavit, were conducted in anticipation of litigation that might arise as a result of the matters asserted by the former officer or connected to the pending class action and derivative litigation. The Report was distributed only to i2 directors, certain senior management and i2 counsel.

5       The first phase of Baker Botts' investigation and the Report addressed multiple issues, only one of which was revenue recognition. The Report was divided into seven general sections. Only one of those sections directly addressed i2's accounting practices related to revenue recognition matters.

6       The aforementioned section on revenue recognition consisted of two subparts, one of which was prepared by the accounting firm KPMG, LLP. Baker Botts retained KMPG to assist in the investigation of certain matters at i2 and this assistance resulted in an eleven page report written by KPMG ("KPMG Report"). The KPMG Report was copied and placed behind one of the tabs in the overall Report by Baker Botts.

7       The first phase of the investigation concluded with presentations to the Audit Committee and the i2 board of directors in early July 2002. Thereafter, in late August 2002 the former officer and an additional former i2 officer began a series of communications that brought additional information to the attention of the Audit Committee and expanded the allegations regarding revenue recognition. After a period of internal review by management, in late 2002 the Audit Committee began the second phase of the investigation.

8      A number of interviews were conducted during the first phase of the investigation. These interviews were not recorded, the witnesses were not under oath and no witness statements were prepared. The attorneys who conducted the interviews made notes that included observations about issues and follow-up items.

9      The notes taken during the first phase of interviews are different than those from the second phase interviews; the first phase notes are less formal, less complete, and contain more opinion materials. During the second phase, the interviews generally were conducted in law offices, many of the witnesses were represented by counsel and specific marked exhibits were used. The second phase interviews generally took on a more formal air than the first phase of interviews which were frequently conducted at i2 and sometimes over the phone or at the witness' home or office and exhibits were not marked.

10     Following Greg Brady's departure from the i2 Board of Directors in November of 2002, attempts were made to effect his return of his copy of the Report.

11     In November of 2002, Baker Botts and other counsel for i2 met with staff of the SEC. The purpose of this meeting was to discuss with the SEC the disclosure made in i2's September 30, 2002 Form 10-Q, which was filed on November 14, 2002. The Report was not produced to the SEC during this meeting (or at any other time by i2) nor did the SEC staff read or review the report. The SEC staff was informed that the Report was privileged and the matters in the Report were discussed with the SEC in only a general way. Although Baker Botts originally prepared a draft PowerPoint presentation for this meeting, it was not shown at the meeting and was not otherwise given to the SEC.

12     Baker Botts attorneys met with the auditing firm of Deloitte and Touche after the conclusion of the first phase of the investigation.  The provisions of the Report concerning the accounting practices related to revenue recognition matters were reviewed with Deloitte.  Deloitte was informed that the Report was privileged and the other matters in the Report were discussed with Deloitte in only a general way, such that Deloitte could ascertain whether the matters related to accounting issues.  The overall Report was not produced to Deloitte.  Nor did Deloitte read or review the Report.  A copy of the KPMG Report was provided to Deloitte under a directive that it was confidential and should be treated accordingly.

13     The last SEC filing that Brady signed on behalf of i2 was filed on April 9, 2002.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2006.

_____

**CRAIG N. ADAMS**

STATE OF TEXAS       §
                           §

COUNTY OF Dallas    §

> SHARON OHNIKIAN
> Notary Public, State of Texas
> My Commission Expires
> 12/03/2009

SWORN AND SUBSCRIBED before me on the 15th day of June, 2006.

_____
Notary Public in and for the State of Texas

5

No. 04-09892

| | | |
|---|---|---|
| KMART CORPORATION, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| i2 TECHNOLOGIES, INC., | § | |
| SANJIV SIDHU AND GREGORY BRADY, | § | |
| | § | |
| Defendants. | § | 44th JUDICIAL DISTRICT |

## AFFIDAVIT

| | |
|---|---|
| COUNTY OF DALLAS | § |
| | § |
| STATE OF TEXAS | § |

1.    My name is Craig N. Adams. I am over the age of 18, have never been convicted of a felony, and am of sound mind.  I have personal knowledge of the facts set forth in this affidavit, and all of these facts are true and correct.

2.    I am a partner in Baker Botts L.L.P., where I work in the corporate securities practice group.  This affidavit is submitted for the Court's consideration in connection with Kmart Corporation's assertion that i2 Technologies, Inc. ("i2" or "the Company") waived its privileges by producing to the United States Securities and Exchange Commission (the "SEC") materials prepared by Baker Botts in connection with a confidential, internal investigation.

3.    A purported shareholder derivative suit was filed against i2 in April 2001 and a consolidated, amended class action complaint was filed in August 2001, both relating to certain aspects of i2's business (together "the Lawsuits").  In September and October 2001, a former officer of i2 threatened litigation and made allegations related to several topics alleged in the Lawsuits, including accounting practices at i2.

4.      In October 2001, i2's Audit Committee hired Baker Botts to provide it with legal advice; the formal engagement letter was signed in November 2001. Baker Botts was instructed to perform a confidential investigation of the allegations made by the former officer (with the assistance of accounting advisors) and to advise the Audit Committee on its findings and recommendations. Baker Botts' investigation focused in part on i2's general revenue recognition practices.

5.      Pursuant to this engagement, Baker Botts collected and reviewed approximately 40,000 pages of materials and conducted interview sessions with current and former i2 employees. Baker Botts lawyers exercised their judgment and analytical skills in selecting and distilling the large volume of information under review for purposes of providing legal advice to the Audit Committee in connection with the matters alleged by the former i2 officer.

6.      At the conclusion of its investigation in July 2002, Baker Botts described its analysis of the allegations and communicated its findings and legal advice to the Audit Committee by way of a privileged and confidential written report (which included exhibits). Except for the unauthorized/inadvertent production noted in the next paragraph, this report has not been provided to the SEC.

7.      Baker Botts presented its findings and legal advice to the i2 Board of Directors in July 2002. As part of that communication, copies of the Baker Botts report were made available to members of the then-current i2 Board of Directors. The copies were plainly marked: "This is a confidential document that is subject to the attorney-client communication privilege and is to be considered attorney work-product." Mr. Gregory Brady, then a member of i2's Board of Directors, received a copy of the report in his capacity as a director. Subsequently, i2 discovered that, without i2's authorization, Mr. Brady's counsel had provided a copy of the Baker Botts

DAL01:870307

2

7

report to the SEC. i2 was notified of the production by the staff of the SEC, who promptly called the matter to i2's attention and returned the materials to Baker Botts. The staff of the SEC acknowledged that the materials provided by Brady's counsel were marked privileged and affirmatively stated that the materials had not been reviewed by the SEC except to identify them.

8.      In the fall of 2002, the former officer, together with another former officer of i2, brought additional information to the attention of the Audit Committee respecting the prior allegations regarding revenue recognition. The Audit Committee asked Baker Botts for legal advice and requested a review of this additional information; Baker Botts performed this second-phase review, again with the assistance of accounting advisors.

9.      The Company disclosed the existence of the internal investigation, as well as the receipt of the latest allegations, in its Report on Form 10-Q for the quarterly period ended September 30, 2002. In addition, the Company notified the SEC. Thereafter, the staff of the SEC opened an informal inquiry into these allegations and other matters relating to the Company's financial reporting.

10.     In January 2003, the Company announced that the Audit Committee had engaged Deloitte & Touche LLP to re-audit the Company's financial statements for the years ended December 31, 2000 and 2001. The Company notified the SEC of the decision to restate its financial statements, and the Company, its counsel and the Audit Committee's counsel met with the SEC. At this meeting, Baker Botts referenced a three-page power point presentation that identified several i2 customers (none of which were Kmart) and produced a copy of such presentation to the SEC.

11.     Pursuant to its ongoing engagement, during this second phase of its investigation, Baker Botts reviewed over 300,000 emails and other documents and conducted interviews of

current and former employees relating to revenue recognition issues. Baker Botts lawyers conducting the interviews prepared summaries of their observations and thoughts with respect to each interview. Baker Botts lawyers exercised their judgment and analytical skills in selecting and distilling the large volume of information under review for purposes of providing legal advice to the Audit Committee in connection with the matters alleged by the former i2 officers.

12.     On or about March 26, 2003, the Company was advised that the SEC had issued a formal order of investigation to determine whether there had been violations of the federal securities laws by the Company and/or others involved with it in connection with matters relating to the restatement of the Company's consolidated financial statements.

13.     On March 28, 2003, the Company, the Audit Committee and the SEC entered into a confidentiality agreement, pursuant to which the SEC agreed to maintain the confidentiality of materials provided by the Company and the Audit Committee and agreed not to disclose such materials to any third party, except to the extent that the SEC determined that disclosure was otherwise required by law or would be in furtherance of the SEC's discharge of its duties and responsibilities. Further, the SEC agreed that it would not assert that the production of materials constituted a waiver of the protection of the attorney work product doctrine, the attorney-client privilege, or any other privilege applicable to such information. A copy of the Confidentiality Agreement is attached as Exhibit A to this affidavit.

14.     In June 2003, Baker Botts communicated its findings and legal advice as to this second phase investigation to the Audit Committee and Board of Directors by way of a confidential oral presentation, which included a power-point presentation. The presentation referenced selected documents that were reviewed during the investigation and determined to be important by Baker Botts.

4

9

15.     In July 2003, Baker Botts made the same oral report to the SEC and reviewed the results of the investigation, including the confidential power point presentation.  In order to facilitate the SEC's understanding of the presentation, Baker Botts annotated the presentation to include references to the specific documents discussed in the presentation.  No copy of the presentation was provided to the Audit Committee or produced to the SEC.

16.     Baker Botts provided copies of the presentation exhibits to the SEC.  At the request of the SEC, Baker Botts also provided to the SEC copies of the interview observations and summaries, exhibits used during witness interviews, and a collection of other selected documents it had uncovered during its investigation.

17.     The oral presentation and all documents provided to the SEC were made in anticipation of or pursuant to the confidentiality agreement between i2, the i2 Audit Committee, and the SEC, and Baker Botts submitted these materials with the express request that they be afforded confidential treatment under the SEC's rules and not be made subject to a Freedom of Information Act or similar request or supplied to any third party, governmental or private.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of this affidavit are true and correct.

_____
Craig N. Adams

SUBSCRIBED AND SWORN TO before me on the 19th day of September, 2005, to certify which witness my hand and seal of office.

SHARON OHNIKIAN
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
DEC. 3, 2005

_____
Notary Public for the State of Texas

DAL01:870307

5

10



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
FORT WORTH DISTRICT OFFICE
801 CHERRY STREET
SUITE 1900
FORT WORTH, TEXAS 76102
PHONE: (817) 978-3821     FAX: (817) 978-2700

IN REPLYING
PLEASE QUOTE

FW-02564

December 11, 2003

VIA FEDERAL EXPRESS
AND FACSIMILE (202) 261-3333

Catherine Botticelli, Esq.
Dechert LLP
1775 Eye Street, NW
Washington, DC 20006-2401

VIA FEDERAL EXPRESS
AND FACSIMILE (713) 229-2761

Joseph A. Cialone, II
Baker Botts LLP
910 Louisiana Street
Houston, Texas 77002-4995

Re:     *i2 Technologies* (FW-02564)

Dear Counsel:

In response to a subpoena to Greg Brady, the staff received a large document, Bates numbered GB 01254 through GB 1630, that appears from our very limited review to be a report from Baker Botts to i2's board of directors or audit committee from July 2002. The document provides that it "is subject to the attorney-client communication privilege and is to be considered attorney work-product." We have not read the document, other than simply to identify it, and have not made or retained any copies.

Without conceding that the document, or any part of it, is in fact privileged or otherwise exempt from production, or that any applicable privileges or exemptions have not been waived, we are returning it to Mr. Cialone, as counsel for the audit committee, so that the audit committee can ascertain whether it intends to assert privilege over this document or any part of it. Naturally, if the audit committee asserts such privilege, we expect it to be included on a privilege log. Any parts to which privilege is not asserted are to be produced.

I have copied Mr. Brady's counsel on this communication for his information.

Should you have any questions concerning this matter, contact me at 817-978-1417 or Patrick Craine at 817-978-1420.

Very truly yours,

David L. Peavler

cc:     Edward Koppman

11

# BAKER BOTTS LLP

ONE SHELL PLAZA
910 LOUISIANA
HOUSTON, TEXAS
77002-4995
713 229.1234
FAX 713.229.1522

AUSTIN
BAKU
DALLAS
**HOUSTON**
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

January 15, 2004

Joseph A. Cialone, II
713.229.1261
FAX 713.229.2761
joseph.cialone@bakerbotts.com

i2 Technologies US, Inc.
(SEC Formal Investigation)
020431.1302

BY FAX

Mr. Edward S. Koppman
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, TX 75201

Dear Ed:

This is to follow-up on our conversation last week in Dallas regarding Mr. Brady's retention of a copy of the July 2002 Report to the Audit Committee of the Board of Directors of i2 Technologies. On behalf of the Audit Committee, this is to request that the originals and all copies of the report and exhibits to the Report be returned at once to me, as counsel for the Audit Committee.

The Report and exhibits are privileged and protected by the attorney work-product doctrine. Mr. Brady came into possession of the materials while he was serving on i2's Board of Directors in early July 2002 when the Audit Committee report was presented to the full Board. The material was provided to him in his official capacity with an obvious intent that it remain privileged. As the privilege and other protections belong to the entity, and as Mr. Brady is no longer affiliated with the entity, it is inappropriate for him to maintain the materials.

Please forward these materials to my attention. Upon receipt, we will maintain them with our files related to the Audit Committee.

Thanks your attention to this matter.

Yours very truly,

Joseph A. Cialone, II

JAC:93291
cc:     Timothy S. Durst

HOU03:950520.1

12

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━━ Attorneys at Law

EDWARD S. KOPPMAN
(214) 969-2848/fax: (214) 969-4343
ekoppman@akingump.com

July 13, 2004

VIA HAND DELIVERY

Craig N. Adams, Esq.
Baker Botts LLP
2001 Ross Avenue
Dallas, Texas 75201-2980

      Re:    Greg Brady (i2 Technologies, Inc.)

Dear Craig:

      Enclosed are the following:

      1.    Confidential Document, Copy No. 17, entitled: Report to the Audit Committee of the Board of Directors of i2 Technologies, Inc. from Legal Counsel Baker Botts LLP dated July 3, 2002.

      2.    Confidential Document, Copy No. 17, entitled: Exhibits to Report to the Audit Committee of the Board of Directors of i2 Technologies, Inc. from Legal Counsel Baker Botts LLP dated July 3, 2002.

      3.    Confidential Document, Copy No. 7, entitled: Report to the Audit Committee of the Board of Directors of i2 Technologies, Inc. from Legal Counsel Baker Botts LLP dated July 3, 2002.

      The enclosures are the original documents received from Greg. Brady. Mr. Brady advises me that he has not retained copies.

      Sometime ago I sent a copy of the report to John Dowd in our Washington, D.C. office and Mike Biles in our Austin office. This confirms that each of them will destroy his respective copy of the report.

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
Attorneys at Law

Craig N. Adams, Esq.
Page 2
July 13, 2004


        We have not concluded that the enclosed documents are protected or not by the attorney-client privilege or the attorney work-product doctrine. Our return of these documents in no way prejudices are right to contend that the documents are or are not protected by any applicable privilege.


                                Sincerely yours,



                                Edward S. Koppman

ESK/sah
Enclosures

cc:      Joseph A. Cialone, III, Esq.

601352.0001
#5553323

# BAKER BOTTS LLP

ONE SHELL PLAZA
910 LOUISIANA
HOUSTON, TEXAS
77002-4995

TEL +1 713.229.1234
FAX +1 713.229.1522
www.bakerbotts.com

AUSTIN
DALLAS
DUBAI
HONG KONG
**HOUSTON**
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

May 3, 2006

BY FAX

Mr. Edward S. Koppman
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, TX 75201

Joseph A. Cialone, II
713.229.1261
FAX 713.229.2761
joseph.cialone@bakerbotts.com

Dear Ed:

We learned yesterday that, contrary to your 2004 written assurances, a copy (or copies) of the July 3, 2002 Report to the Audit Committee of the Board of Directors of i2 Technologies was retained by you or your colleagues. On behalf of the Audit Committee, we request that the originals and all copies or excerpts of the Report and exhibits to the Report (collectively, the "Report") be returned immediately to us, as counsel for the Audit Committee.

You will remember that we repeatedly asked you to return all copies of the Report after we learned that Mr. Brady had retained a copy of the Report. When the Report was not returned, we made the request in writing. A copy of my letter to you is attached. Ultimately, you sent Mr. Adams the attached July 13, 2004 letter, in which you represented that the originals of the Report were being returned and that neither your firm nor Mr. Brady would retain copies. In that letter, you specifically assured us that Mr. Biles would destroy the copy he had in his possession. It now appears that Mr. Biles and possibly others retained copies of the Report.

As we have previously explained, the Report is privileged and protected by the attorney work-product doctrine. Without debating the point here, we believe it is sufficient to say that you know that we have claimed these privileges on behalf of the Audit Committee.

Your firm recently served subpoenas to the Audit Committee and our firm requesting, *inter alia*, production of the Report. As you apparently still have a copy of the Report (and possibly related materials), this circumstance raises the specter that your subpoenas were served to disguise the fact that you retained a copy of the Report, notwithstanding your express written assurances to the contrary. That concern is punctuated by Mr. Biles' statements that harassing discovery could be avoided if the Report were produced (*see, e.g.,* his attached email of this morning). We also note that you stood by silently in another case while Judge Kelton was told of your representation that neither Mr. Brady nor Akin Gump were in possession of the Report.

Please return the originals and all copies or excerpts of the Report and exhibits to the Report to my office at once. If there is some explanation for the fact that copies of the Report (or excerpts therefrom) were retained despite the assurances in your July 13, 2004 letter,

DAL01:904414.4

15

**BAKER BOTTS** LLP

Mr. Edward S. Koppman
May 3, 2006
Page 2


we would be interested in hearing it so that we may consider what next steps are appropriate. As things now stand, it seems that your present subpoena is little more than an attempt to sanitize this unfortunate situation.

Thanks for your attention to this matter.

Yours very truly,

Joseph A. Cialone, II


Attachments

cc:     David L. Peavler
        Toby M. Galloway
        Timothy S. Durst
        Craig N. Adams

# AKIN GUMP
# STRAUSS HAUER & FELD ᴸᴸᴾ

■■■■■■■■■■■■ Attorneys at Law

**EDWARD S. KOPPMAN**
(214) 969-2846/fax· (214) 969-4343
ekoppman@akingump.com

May 9, 2006

**VIA ELECTRONIC MAIL**

Joseph A. Cialone, II, Esq.
Baker Botts LLP
One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995

        Re:     Greg Brady (i2 Technologies, Inc.)

Dear Joe:

        I read with concern your letter of May 3, 2006 demanding return of all copies or excerpts
of a July 3, 2002 Report to the Audit Committee of the Board of Directors of i2 Technologies
(the ("Report"). I disagree with your contentions as I will fully explain below.

        I have not misrepresented my actions. While one of our attorneys retained a portion of
the Report, a fact of which I was unaware at the time of my letter, there is no demonstrable harm
in his having done so as the information therein was known to Mr. Brady and to his counsel at
the time your firm demanded its return.

        Nor can you claim that Mr. Brady's current efforts to obtain the Report and related
materials in discovery come as a surprise. I have made clear on many occasions to i2's in-house
and outside counsel, including Baker Botts, Mr. Brady's need for the Report and related
materials and our intention of pursuing discovery on that front. Due to other litigation, we have
pursued only recently proper discovery, by way of subpoenas to the Audit Committee, to Baker
Botts, and to KPMG. Your letter questions the timing of our formal discovery requests for these
materials.

- Is the Audit Committee (or Baker Botts) claiming that it would have benefited
  from an earlier escalation of these requests?

- Have you inquired of Craig Adams as to the number of attempts I made to
  obtain these materials informally in recent months and his failure to respond?

AKIN GUMP
STRAUSS HAUER & FELD L.L.P.
━━━━━━━━━━ Attorneys at Law

Joseph A. Cialone, II, Esq.
Page 2
May 9, 2006

The Report was voluntarily provided to our client, Greg Brady, by your firm on multiple occasions. You provided Mr. Brady with a copy of the Report in July 2002, and, in turn, he provided your firm with his comments on the Report. In August 2002, Mr. Brady specifically requested that your firm provide him with a copy of the Report, so that he could be reminded of his comments. You provided him another copy of the Report on or about August 13, 2002.

- Are you asserting that the Report was privileged information of the Audit Committee? If so, how do you explain having provided it to Mr. Brady, who – although a board member – was not on the Audit Committee?

- How many other i2 Board Members, officers, or employees were given copies of the Report?

- Did you share the Report or any of its findings, conclusions, or exhibits with i2's outside auditors?

- How do you support a claim of privilege if the information was shared with a firm outside of i2 that is required to maintain absolute independence from the Company and its Audit Committee?

- Did you share the Report or any of its findings, conclusions, or exhibits with the SEC or any governmental authorities?

- Given the Audit Committee's apparent cooperation with the SEC, wouldn't it be customary to have presented the findings of the Report to the SEC in the same form they were provided to the Board (or at least by an oral or power point presentation)?

- Did you make such a presentation to the SEC before the March 28, 2003 confidentiality agreement with the SEC?

- Did Baker Botts fully disclose to the court in the Kmart litigation who outside of i2's Board of Directors received copies of the Report or were provided presentations concerning the findings of the Audit Committee?

As you know, Baker Botts served as Mr. Brady's counsel in related securities class action and derivative litigation at the outset of its investigation for the Audit Committee, and later resigned from representing Brady for the purpose of taking on the Audit Committee representation. During the course of its investigation, the Audit Committee (through Baker Botts

AKIN GUMP
STRAUSS HAUER & FELD L.L.P.
━━━━━━━━━ Attorneys at Law

Joseph A. Cialone, II, Esq.
Page 3
May 9, 2006


and its retained advisors, KPMG) reviewed tens of thousands of pages of documents and interviewed dozens (upon dozens) of witnesses, including Mr. Brady. Baker Botts devoted over 4000 hours and billed i2 substantial fees during its initial investigation. The resulting Report, which did not support a massive restatement of the Company's financial statements, was provided to the members of the Board to enable them to fulfill their duties of oversight. Mr. Brady received it and relied upon it in fulfilling those duties.

Subsequently, the Audit Committee re-opened its investigation and ultimately the Company determined to restate several years of financial statements. If the SEC's production to Brady of materials from its investigation of i2 is complete, the Audit Committee apparently determined to provide this portion of its review – and only this portion of its review – to the SEC. Notably, your firm only produced the summaries of witness interviews conducted during the "second phase" investigation. Ultimately, this selective disclosure of information to the SEC resulted in the filing of a civil complaint against Mr. Brady, which is ongoing. Additional civil litigation naming Mr. Brady as a defendant was filed by a former i2 customer, Kmart, which reviewed during the course of the SEC investigation certain confidential i2 documents that were used as exhibits in the Audit Committee investigation. As you know, the DOJ is also reviewing the same facts and circumstances that gave rise to the original class action litigation, the Audit Committee investigation, and the SEC investigation, and has interviewed many witnesses, including a number interviewed by Baker Botts in the course of the Audit Committee investigation. The DOJ interviews are being conducted jointly with the SEC and used to support the SEC's civil case. Mr. Brady has received virtually no investigative testimony from the SEC, which refuses to produce the Memoranda of Interview generated in these joint interviews. At the same time, Mr. Brady is unable to interview former i2 officers and employees, as both the company and the individuals have been intimidated by the DOJ and fear repercussions from speaking to anyone other than the government.

Because of the confluence of these events, Mr. Brady has been greatly disadvantaged in his efforts to defend himself. When I attempted in November 2003, on his behalf, to tender the Report to the SEC to assure the staff had a full view of the work done by the Audit Committee -- including an assessment that effectively exonerated Mr. Brady -- Baker Botts demanded return of the Report. Mr. Brady has never been provided access to Baker Botts' summary of its initial interview with him, nor the other interviews that supported the Report. Only recently have we received from the SEC some portion of the assessment done by KPMG for the Audit Committee, under Baker Botts' direction (and only because it was produced to the SEC by Deloitte & Touche in connection with its work on the restatement).

We recently expressed to the SEC our concern that the staff had put blinders on by refusing Mr. Brady's tender of the Report and failing subsequently to insist that the Audit

AKIN GUMP
STRAUSS HAUER & FELD L.L.P.
━━━━━━━━━━━  Attorneys at Law

Joseph A. Cialone, II, Esq.
Page 4
May 9, 2006

Committee produce the Report and any supporting documentation.  Whatever reasons you may have for refusing to allow your former client to have access to this information for his defense, I assume that – if the SEC staff were to request the Report – the Audit Committee will continue to cooperate with the SEC and produce it.

Instead of focusing on Mr. Brady and the significance of this Report to his defense of charges emanating from the Audit Committee's investigation, your letter focuses on an ill-advised attempt to maintain an Audit Committee "privilege" as against Mr. Brady.  When I returned Mr. Brady's original copy of the three documents listed in my letter of July 13, 2004 to Craig Adams of your firm, I expressly informed you that we had not concluded that the documents were protected by the attorney-client privilege or attorney work product doctrine and reserved the right to contest such assertions.  In fact, the Report – having been shared with and relied upon by i2's board and officers – cannot be the subject of an Audit Committee privilege.  Even if disclosure to the Board maintained the privilege, Mr. Brady's reliance upon it (and the necessity of now defending charges to which the Report is relevant) entitles him to have the Report for use in his defense.  Finally, although he has refrained from doing so to date, Mr. Brady is fully prepared to contend that all privileges have been waived by virtue of the wholesale disclosure by the Audit Committee to the SEC and others of the results of the investigation, including display of PowerPoint presentations, discussions with Audit Committee counsel, and selective delivery of interview memoranda and exhibits from the so-called "phase 2" investigation.

We are reviewing the objections of your firm and the Audit Committee to our subpoenas and look forward to your response to the questions raised in this letter.

Sincerely yours,

Edward S. Koppman

Enclosures

cc:     David L. Peavler
        Toby M. Galloway
        Timothy S. Durst
        Craig N. Adams

#5911514 v4

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# Form 10-Q

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the quarterly period ended September 30, 2002

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the transition period from _____ to _____

### Commission file number 0-28030

# i2 Technologies, Inc.
#### (Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **75-2294945** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **One i2 Place** | **75234** |
| 11701 Luna Road | (Zip code) |
| Dallas, Texas | |
| (Address of principal executive offices) | |

### (469) 357-1000
#### (Registrant's telephone number, including area code)

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

As of November 5, 2002 the Registrant had 432,824,073 shares of $0.00025 par value Common Stock outstanding.

Table of Contents

while in possession of material adverse non-public information regarding our business and prospects, and (ii) disseminating inaccurate information regarding our business and prospects to the market and/or failing to correct such inaccurate information. As stated, the complaint is derivative in nature and does not seek relief from i2 itself. However, we have entered into indemnification agreements in the ordinary course of business with certain of the defendant officers and directors and may be obligated throughout the pendency of this action to advance payment of legal fees and costs incurred by the defendants pursuant to our obligations under the indemnification agreements and/or applicable Delaware law. This suit has since been removed to the United States District Court for the Northern District of Texas (Dallas Division). We filed a motion to dismiss the action on February 19, 2002 and the motion was granted on October 8, 2002. Plaintiffs filed an appeal of the decision on October 15, 2002. While there can be no assurance, we currently believe the outcome of this outstanding legal claim will not have a material adverse effect on our business, financial condition or results of operation; however, the outcome is inherently uncertain, and it is possible that this matter may be resolved adversely to us.

We are subject to various other claims and legal actions, including claims and legal actions from former employees and certain customers. We have accrued for estimated losses in the accompanying financial statements for those matters where we believe the likelihood of an adverse outcome is probable and the amount of the loss is reasonably estimable. The adverse resolution of any one or more of these matters could have a material adverse effect on our business, financial condition or results of operations.

## ITEM 2.   CHANGES IN SECURITIES AND USE OF PROCEEDS

During the third quarter of 2002, we issued an aggregate of 3,980 shares of our common stock to employees pursuant to exercises of stock options that were granted prior to September 24, 1997 with exercise prices ranging from $0.30 to $0.68 per share. These issuances were deemed exempt from registration under Section 5 of the Securities Act of 1933 in reliance upon Rule 701 thereunder and appropriate legends were affixed to the share certificates issued in each such transaction.

## ITEM 3.   DEFAULTS UPON SENIOR SECURITIES

None

## ITEM 4.   SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS

None

## ITEM 5.   OTHER INFORMATION

We announced in October 2002 that our adjusted operating expense for the fourth quarter of 2002 would be in the estimated range of $120-125 million. On November 14, 2002, we put in place an additional restructuring plan. It is intended that this restructuring plan will result in an estimated reduction in our adjusted quarterly operating expense, not including any additional restructuring charge, to below $100 million by the end of the first quarter of 2003. Expense reductions will be implemented across the organization and will be accomplished through facility closures, employee reductions preliminarily estimated at 15% of our employee base and other expense reductions.

Effective September 30, 2002, Romesh Wadhwani resigned from our Board of Directors.

On September 12, 2002, The Home Depot, Inc. filed a lawsuit in the Superior Court of Fulton County, Georgia alleging deficiencies in our products and services and breaches of contract among other claims, requesting damages in an amount exceeding $20 million. The Home Depot dismissed the action without prejudice on September 27, 2002 pursuant to a Standstill Agreement between i2 and The Home Depot. We are currently discussing The Home Depot's claims with The Home Depot, but would vigorously defend against this

49

22

**Table of Contents**

lawsuit if it is re-filed. While there can be no assurance, we currently believe the outcome of this matter will not have a material adverse effect on our business, financial condition or results of operation; however, the outcome is inherently uncertain and it is possible that this matter may be resolved adversely to us.

We and certain members of our board of directors have received a series of communications from two of our former officers containing a variety of allegations generally related to: accounting and revenue recognition; inadequate financial controls; and gross negligence or potential fraud in connection with product and customer problems, acquisitions, public disclosure and other management decisions.

Prior to sending the initial correspondence in the series described above, each of the former officers had made claims against us seeking monetary relief. The claims by one officer have been settled. The claim by the other officer, in which he alleged that he is entitled to at least $3 million from us arising from our acquisition of his former company, remains unsettled. In addition, we understand that the two former officers are partners in a business venture which may be competitive with us.

Our board of directors directed its audit committee to investigate the initial allegations promptly after they were received. The audit committee, comprised solely of independent directors, engaged separate legal and accounting advisors to assist with the investigation. The audit committee completed the investigation and reported its findings to our board of directors in the third quarter of this year. Based on the results of the audit committee's investigation, our board of directors concluded that there were no adjustments necessary to our financial statements, that there were no indications of material deficiencies in our financial controls and that the facts did not support the allegations concerning gross negligence or potential fraud.

In September and October 2002, the two former officers brought additional information to the attention of the audit committee in respect of their prior allegations regarding revenue recognition. A review of this additional information was performed and, as a result of that review, our management believes that the revenue recognition allegations remain unsubstantiated by the additional information. Our Management has preliminarily reviewed its findings with the audit committee which in turn has directed management to review those findings with the separate accounting advisors engaged by the audit committee to investigate the initial allegations. Following such review, the audit committee will receive a report from its separate accounting advisors and, if appropriate, will direct the separate accounting advisors to conduct an additional inquiry and analysis.

50

23

Table of Contents

**ITEM 6.   EXHIBITS AND REPORTS ON FORM 8-K.**

(a) *Exhibits*

Exhibits to this Form 10-Q have been included only with the copy of this Form 10-Q filed with the Securities and Exchange Commission. Copies of individual exhibits will be furnished to stockholders upon written request to i2 and payment of a reasonable fee.

| Exhibit Number | Description |
|---|---|
| 10.1 | Convertible Promissory Note, dated August 8, 2001, issued by i2 Technologies, Inc. to Trade Services Holdings, LLC in the principal amount of $60,930,000 |

(b) *Reports on Form 8-K*

During the quarter ended September 30, 2002, we filed the following report on Form 8-K:

- Report on Form 8-K (Item 9) filed on August 14, 2002 reporting that Sanjiv Sidhu, Chairman and Chief Executive Officer of i2 and William Beecher, Executive Vice President and Chief Financial Officer of i2 furnished to the Securities Exchange Commission certificates pursuant to 18 U.S.C. 1350 and attaching such certificates as exhibits.

51

24

i2/SEC 000492

Confidential treatment requested
by i2 Technologies, Inc.

# i2 Technologies, Inc.

## Meeting with
## Securities and Exchange Commission

### January 29, 2003

PRIVILEGED AND CONFIDENTIAL

25

# Revenue Transactions Identified by Management and DT

| Customer | Period | Revenue Amount |
|---|---|---|
| Applied Materials (DT) | Q1 2001 | $11.9M |
| L'Oreal | Q4 1999 | $0.4M |
| Mabe (DT) | Q2 2000 | $0.8M |
| Sara Lee | Q4 2000 | $0.6M |
| Taylor Made | Q3 2000 | $0.8M |
| Transora* | Q4 2000 | $11.4M |

PRIVILEGED AND CONFIDENTIAL

Confidential treatment requested
by i2 Technologies, Inc.

i2/SEC 000493

26

# KPMG Identified Transactions

| Customer | Period | Revenue Booked |
|---|---|---|
| Corporate Express I | Q4 2000 | $10.8M |
| Corporate Express II | Q2 2001 | $4.6M |
| Procter & Gamble I | Q3 2000 | $4.5M |
| Procter & Gamble II | Q1 2001 | $6.0M |
| LSG SkyChefs | Q4 2000 | $7.1M |

PRIVILEGED AND CONFIDENTIAL

Confidential treatment requested
by i2 Technologies, Inc.

i2/SEC 000494

27



May 28, 2003

Spencer C. Barasch
Associate District Administrator
United States Securities and Exchange Commission
Fort Worth District Office
801 Cherry Street, Suite 1900, Unit #18
Fort Worth, Texas 76102

Re: In the Matter of i2 Technologies, Inc. (FW- 02564-A)

Dear Mr. Barasch:

The Audit Committee of i2 Technologies, Inc. has conducted (and continues to conduct) a review of certain matters arising from allegations first made by a former executive of the Company on or about October 17, 2001. In connection with that investigation, the Audit Committee retained legal counsel and accounting expertise. In light of the interest of the Staff of the U.S. Securities and Exchange Commission (the "Staff") in determining whether there have been any violations of the federal securities laws, and the interests of the Audit Committee and the Company in investigating and analyzing the circumstances and people involved in the events at issue, the Audit Committee will provide to the Staff an oral briefing on the results of the investigation as well as certain related documentation (collectively, the "Confidential Materials"). In addition, as you know, the Audit Committee and the Company have previously provided information and other documentation to the Staff; these previously produced materials also are to be treated as Confidential Materials.

Please be advised that by having produced (and continuing to produce) the Confidential Materials in anticipation of or pursuant to this agreement, neither the Audit Committee nor the Company intends to waive the protection of the attorney work product immunity doctrine, attorney-client privilege, or any other privilege applicable to the Confidential Information. The Audit Committee and the Company believe that the Confidential Materials are protected by, at a minimum, the attorney work product doctrine and the attorney-client privilege, both of which warrant protection from disclosure.

i2 TECHNOLOGIES, INC.
One i2 Place
11701 Luna Road
Dallas, TX 75234
469.357.1000 main
www.i2.com

DAL01:372477.A

The Staff will maintain the confidentiality of the Confidential Materials pursuant to this agreement and will not disclose them to any third party, except to the extent that the Staff determines that disclosure is otherwise required by law or would be in furtherance of the Commission's discharge of its duties and responsibilities.

The Staff will not assert that the production of the Confidential Materials to the Commission constitutes a waiver of the protection of the attorney work product doctrine, the attorney-client privilege, or any other privilege applicable to the Confidential Information. The Staff agrees that production of the Confidential Materials provides the Staff with no additional grounds to subpoena testimony, documents or other privileged materials from the Audit Committee or the Company, although any such grounds that may exist apart from such production shall remain unaffected by this agreement.

The Staff's agreement to the terms of this letter is signified by your signature on the line provided below.

Sincerely,

Robert L. Crandall
Chair of the Audit Committee of
i2 Technologies, Inc.

Robert C. Donohoo
Senior Vice President and General Counsel
i2 Technologies, Inc.

AGREED AND ACCEPTED:
United States Securities and Exchange Commission

By: 
Spencer C. Barasch
Associate District Administrator

DAL01:972477.4

29

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE          §
COMMISSION                       §
                                 §
v.                               §          Civil Action No. 3:05-CV-1416-D
                                 §
                                 §
GREGORY BRADY, ET. AL.           §

### AFFIDAVIT OF GAIL FOSTER IN SUPPORT OF
### RESPONSE TO BRADY'S MOTION TO COMPEL

1. My name is Gail Foster. I am an associate with the law firm of Baker Botts LLP, and I am authorized to make this affidavit. All facts in this affidavit are based on my personal knowledge.

2. I have been charged with overseeing the retention and collection of Baker Botts' electronic information that is potentially responsive to Gregory Brady's subpoenas to Baker Botts and the i2 Audit Committee.

3. As part of Baker Botts' document retention and collection efforts in response to the subpoenas, all Baker Botts lawyers who billed time to particular matters for i2 Technologies, Inc., i2 Technologies US, Inc., or the i2 Audit Committee ("i2"), as well as all administrative personnel who support those lawyers, a total of 188 individuals, were asked to quarantine any electronic data relating to i2.

4. I supervised the Baker Botts IT staff who captured the email boxes of individuals who billed time to particular i2 matters, as well as those of their administrative assistants. Under my supervision, the IT staff also captured documents from the firm's document management system using billing numbers for the various i2 matters.

5. While I cannot state with precision the exact volume of information that is responsive to Brady's subpoenas, we have calculated the amount of data that has been collected. That volume includes approximately 322 gigabytes of email and approximately 1/3 gigabyte of electronic documents from the firm's document management system.

6. A general rule is that 1 gigabyte of email is roughly equivalent to 100,000 pages; 1 gigabyte of Word documents is approximately 65,000 pages. Therefore, the amount of potentially responsive electronic Baker Botts data amounts to roughly 32,222,000 pages.

7. Further affiant sayeth not.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2006.

GAIL FOSTER

STATE OF TEXAS      §
                          §
COUNTY OF Harris     §


SWORN AND SUBSCRIBED before me on the 15th day of June, 2006.



CHRISTINE L. STREET
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
FEB. 22, 2007

Notary Public in and for the State of Texas

31

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE          §
COMMISSION                       §
                                 §
v.                               §          Civil Action No. 3:05-CV-1416-D
                                 §
                                 §
                                 §
GREGORY BRADY, ET. AL.           §

**AFFIDAVIT OF STUART L. COCHRAN IN SUPPORT OF
RESPONSE TO BRADY'S MOTION TO COMPEL**

1.  My name is Stuart L. Cochran.  I am an associate with the law firm of Baker Botts LLP, and I am authorized to make this affidavit.  All facts in this affidavit are based on my personal knowledge.

2.  I have worked at Baker Botts since September 2000 and have experience with document review, both in hard copy and electronically.

3.  I worked on what has been referred to as Phase Two of Baker Botts' investigation on behalf of the i2 Audit Committee; my work on these matters commenced in early 2003.  I frequently work with the Baker Botts file for the investigation and interact with secretaries, legal assistants, and legal assistant clerks supporting the investigation whose function it was and is to maintain the file.  I am therefore familiar with the Baker Botts file relating to the investigation.

4.  Currently, the total number of boxes that comprise Baker Botts' hard-copy central file relating to its representation of the i2 Audit Committee is 226.  Much of this information is the documentation, email, and interview summaries that has been produced to the SEC and, I understand, made available to Mr. Brady by the SEC.  The central file also contains

internal Baker Botts work product, including internal memoranda and analyses, as well as privileged attorney-client communications.

5.  Individual lawyers and others at Baker Botts have maintained their own files, as well. Those individual files are in addition to the 226 boxes noted above as comprising the central file.

6.  The first step in any process to review the central file for materials potentially responsive to Mr. Brady's subpoenas to the Audit Committee and Baker Botts would be to segregate the materials produced to the SEC (and thus to Mr. Brady), from the internal working files.

7.  Before production in response to Mr. Brady's subpoenas, the materials would need to be reviewed for responsiveness and privilege. Assuming an average of 2000 pages per box (in my experience, boxes are typically 2000 to 3500 pages, depending upon the volume and size of documents in the box), the file consists of roughly 452,000 pages of materials. This does not include any individual lawyer's hard-copy files relating to i2 or any electronic files, including email or documents on the Baker Botts' document management system.

8.  Even assuming a lawyer can review on average the equivalent of one box of information per hour (which is unlikely; in my experience a single box can take a day or more to review), 226 hours (almost six, 40-hour work weeks) would be required to review for responsive materials the central Baker Botts file.

9.  I also understand that the equivalent of roughly 32,222,000 pages of electronic information has also been collected, including email files and documents from the Baker Botts document management system assigned to particular i2 matter numbers. The work

performed and billed to these particular matters included corporate work, debt retirement, and SEC disclosure issues; much of the electronic information therefore is presumably irrelevant to this case and/or privileged. In addition, lawyers' email files relating to i2 likely include documents relating to litigation and corporate matters Baker Botts has handled for i2 that have no bearing on this case.

10. The electronic information cannot be easily divided into privileged or non-privileged information and will have to be reviewed carefully page-by-page for responsiveness and privilege. Again assuming 2000 pages/box, 32,222,000 pages is the equivalent of roughly 16,111 boxes. Assuming a lawyer can review the equivalent of one box of information per hour, 16,111 hours (or 403 forty-hour weeks or about eight years) would be required to review all the electronic materials potentially responsive to the subpoenas.

11. Further affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June **15**, 2006.

**STUART L. COCHRAN**

STATE OF TEXAS                §
                             §
COUNTY OF _Dallas_            §

SWORN AND SUBSCRIBED before me on the _15th_ day of June, 2006.

_____
Notary Public in and for the State of Texas



Cheryl D. Martin
Notary Public, State of Texas
My Commission Expires:
February 24, 2008

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION | § | |
| | § | NO. 3:05-1416 |
| v. | § | |
| | § | |
| GREGORY BRADY, ET. AL. | § | |

## THE AUDIT COMMITTEE OF i2 TECHNOLOGIES, INC.'S
## OBJECTIONS TO SUBPOENA DUCES TECUM

The Audit Committee of i2 Technologies, Inc.'s (the "Company") Board of Directors (the

"Audit Committee") serves these objections to the subpoena issued on April 19, 2006 by Akin

Gump Strauss Hauer & Feld LLP on behalf of Gregory Brady (collectively "Brady") and states

as follows:

### OBJECTIONS APPLICABLE TO ENTIRE SUBPOENA

1. The Audit Committee objects to Brady's apparent attempt to use the subpoena to disguise his improper and concealed retention of the Company's privileged information. In July 2002, in his capacity as a member of the Company's Board of Directors, Brady was provided with a copy of Baker Botts' July 2002 report to the Audit Committee. The report indicated that it was "a confidential document that is subject to the attorney-client communication privilege and is to be considered work product," and it was expected that Board members would maintain the Company's privileges.

    After Brady left the Company, counsel for the Audit Committee verbally and repeatedly asked Brady to return the report. The Company then discovered that, without the Company's authorization, Brady had provided to the SEC a copy of the report. The SEC notified the Company of the production and returned the materials to counsel for the Company and the Audit Committee. The SEC acknowledged that the materials were marked as privileged and that the SEC had not read them, other than to identify them.

    In July 2004, Brady assured the Company in writing that he had returned the original and all copies of the report and its exhibits. On May 2, 2006, the Company learned that Brady apparently had kept a copy of the materials despite his previous representations to the contrary.

    The subpoena appears to have been served for the improper purpose of disguising the fact that Brady improperly (and secretly) retained a copy of the report.

2. The Audit Committee objects to Brady's blatant failure to comply with Federal Rule of Civil Procedure 45(c)(1); Brady has taken no reasonable steps to avoid imposing undue burden or expense on the Audit Committee or its representatives. For instance, Brady made no attempt to tailor the subpoena to discoverable information or to take into account that a significant portion of the matters requested have been produced to Brady already by the plaintiff, the Securities and Exchange Commission (the "SEC"). The result is that the subpoena purports to impose a substantial, unnecessary burden on the Audit Committee.

3. The Audit Committee objects to the subpoena as unreasonably and substantially duplicative of discovery already produced to Brady by the plaintiff, the SEC. The Audit Committee understands that the SEC has already produced to Brady all materials related to this case that the Company, the Audit Committee, Deloitte & Touche, or any other person produced to the SEC.

4. The Audit Committee objects to Brady's obvious (and admitted) attempt to use the subpoena as an end run on the discovery process in a criminal proceeding.

5. The Audit Committee objects to producing materials protected from discovery by the attorney-client and work-product privileges.

6. The Audit Committee objects to the subpoena on the grounds that it fails to allow a reasonable time for compliance and is overly broad in temporal scope. Two weeks is not a reasonable time to request compliance with a subpoena that purports to seek over five years of records, including potentially hundreds of thousands of the Company's emails and essentially all documents relating to every single communication any person at Baker Botts, Deloitte & Touche or KPMG LLP has ever had with anyone from the Company (or that person's agents), irrespective of their relevance to this case. The Audit Committee requested additional time to respond, but Brady refused.

7. The Audit Committee objects to the subpoena because it is not reasonably calculated to lead to the discovery of admissible evidence. The subpoena seeks documents with no plausible relevance to this case, including, for example, documents from other matters involving the Company that have no bearing on Brady or the issues in this case and documents that cannot possibly contain evidentiary information.

8. The Audit Committee objects to the subpoena because it subjects the Audit Committee and its representatives to undue burden and is overly broad and harassing. The subpoena, for example, purports to require every Baker Botts lawyer who ever worked on any matter for the Company or the Audit Committee to review every document, including, for example and without limitation, emails, correspondence, pleadings, discovery materials, draft agreements and SEC filings, in his/her possession relating to the Company irrespective of their relevance to this case. Because the substantial majority of these documents are not relevant and are likely privileged, the subpoena in essence seeks to require the Audit Committee to create a privilege log for five years of irrelevant documents.

9. Given Brady's total disregard for the proper bounds of discovery, the Audit Committee objects to creating and producing a privilege log of responsive privileged documents on the grounds that it would impose an undue and unreasonable burden on the Audit Committee and its representatives.

10. The Audit Committee objects to the definition of "Audit Committee" because it includes persons and entities who are not agents or representatives of the Audit Committee.

11. The Audit Committee objects to Instruction 7 to the extent it seeks to modify the Federal Rules of Civil Procedure. The Audit Committee will comply with the Federal Rules.

12. The Audit Committee objects to producing metadata. Any documents that the Audit Committee produces will be in hard copy or TIF format, and the Audit Committee objects to producing documents in any other form.

## SPECIFIC OBJECTIONS

**REQUEST NO. 1:**

All documents you produced or showed to government investigators, including representatives of the Securities and Exchange Commission ("SEC"), Department of Justice, U.S. Postal Inspector, or any other government entity in response to any formal or informal request concerning i2 or any of its current or former officers, directors, or employees.

**RESPONSE:**

The Audit Committee objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all materials produced or shown to the government are relevant to this case. The Audit Committee further objects because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects to producing materials that were shown but not produced to the government. The Audit Committee further objects to this request because Brady has access to all the materials produced to the government through the SEC, the plaintiff in this case. Moreover, the Audit Committee has produced no materials to the "government" that were not produced to the SEC; all discoverable materials produced to the government are therefore available to Brady through plaintiff. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 2:**

All correspondence with the Securities and Exchange Commission, Department of Justice, or U.S. Postal Inspector concerning i2 or any of its current or former officers, directors, or employees.

**RESPONSE:**

The Audit Committee objects to this request because Brady has access to and should request from the SEC correspondence with the SEC, the plaintiff in this case. The Audit Committee further objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all correspondence with the SEC is relevant to this case. The Audit Committee further objects because correspondence with the D.O.J. or the Postal Inspector is neither relevant nor properly discoverable. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 3:**

All documents concerning any work or services by Baker Botts on behalf of the Audit Committee of the Board of Directors of i2.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all materials relating to Baker Botts' representation of the Audit Committee or the Company's Board of Directors are relevant to this case. The Audit Committee further objects to this request as harassing and because responding would be unduly burdensome. The Audit Committee further objects to this request because Brady has access to any discoverable documents through the SEC, the plaintiff in this case. Finally, this request is vague and does not identify with sufficient specificity the documents it seeks. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 4:**

The Report to the Audit Committee of the Board of Directors of i2 dated July 3, 2002.

**RESPONSE:**

The Audit Committee objects to this request because it is Brady's attempt to disguise his improper and concealed retention of the Company's privileged information. The Audit Committee further objects to this request because it calls for materials protected from discovery

by the attorney-client and work-product privileges. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; this report addresses matters not relevant to this case. The Audit Committee will not produce this document.

**REQUEST NO. 5:**

All documents concerning the Report to the Audit Committee of the Board of Directors of i2 dated July 3, 2002, including but not limited to all documents reviewed by Baker Botts or KPMG in the preparation of the Report.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all materials concerning the report are relevant to this case. The Audit Committee further objects to this request as harassing and because responding would be unduly burdensome. The Audit Committee further objects to this request because Brady has access to any discoverable documents (witness statements and Company documents reflecting the facts addressed in Baker Botts' and KPMG's work product, for example) through the SEC, the plaintiff in this case. Finally, this request is vague and does not identify with sufficient specificity the documents it seeks. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 6:**

All documents concerning any interview or communication by Baker Botts, KPMG, or Deloitte & Touche LLP with any current or former i2 employee, officer, director, customer, prospective customer, supplier, consultant, auditor, accountant, attorney or agent concerning defendants, i2's products, i2's sales practices or i2's accounting, including any transcripts, notes, summaries and correspondence.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all the requested materials are relevant to this case. The Audit Committee further objects to this request as harassing and because responding would be unduly burdensome; read literally, this request calls for essentially every document relating in any way to any communication Baker Botts, Deloitte, or KPMG ever had with anyone relating to i2. The Audit Committee further objects to this request because Brady has access to any discoverable documents through the SEC, the plaintiff in this case, and

because Brady can access information from third parties as easily as from the Audit Committee. Finally, this request is vague and does not identify with sufficient specificity the documents it seeks. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 7:**

All documents concerning any interview or communication by Baker Botts, KPMG, or Deloitte & Touche LLP with any agent, consultant, lawyer, or private investigator for any current or former i2 employee, customer, prospective customer, supplier, consultant, auditor, accountant or attorney concerning defendants, i2's products, i2's sales practices or i2's accounting, including any transcripts, notes, summaries and correspondence.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all the requested materials are relevant to this case. The Audit Committee further objects to this request as harassing and because responding would be unduly burdensome; read literally, this request calls for essentially every document relating in any way to any communication Baker Botts, Deloitte, or KPMG ever had with anyone relating to i2. The Audit Committee further objects to this request because Brady has access to any discoverable documents through the SEC, the plaintiff in this case, and because Brady can access information from third parties as easily as from the Audit Committee. Finally, this request is vague and does not identify with sufficient specificity the documents it seeks. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 8:**

All documents reviewed or prepared by KPMG in connection with Baker Botts' investigation on behalf of the Audit Committee of the Board of Directors of i2.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all materials relating to KPMG's representation of the Audit Committee are relevant to this case. The Audit Committee further objects to this request as harassing and because responding would be unduly burdensome. The Audit Committee further objects to this request because Brady has access to any discoverable information through the SEC, the plaintiff in this case. Finally, this request is vague and does not identify with sufficient specificity the documents it seeks, and it seeks documents not within the Audit Committee's possession, custody, or control. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 9:**

Documents sufficient to identify all current or former i2 employees, attorneys, auditors, accountants, agents, consultants, customers, prospective customers or suppliers who government investigators have requested to interview.

**RESPONSE:**

The Audit Committee objects to this request because it is an attempt to end run proper discovery procedures and limits in a criminal case. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad. The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects to this request because Brady has access to any discoverable information through the SEC, the plaintiff in this case. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 10:**

All minutes, materials, presentations, or board packages of the Audit Committee of i2's Board of Directors.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all Audit Committee documents are relevant to this case, and this request is not limited in temporal scope. The Audit Committee further objects to this request because Brady has access to any discoverable documents through the SEC, the plaintiff in this case. The Audit Committee further objects because the terms "materials" and "board packages" are vague and ambiguous. In response to this request and without waiving these objections, the Audit Committee will produce responsive, non-privileged documents since October 2001.

**REQUEST NO. 11:**

All documents concerning any invoice for services rendered by Baker Botts or KPMG in connection with any investigation on behalf of the Audit Committee of the Board of Directors of i2.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges. The Audit Committee further

objects because this request is not reasonably calculated to lead to the discovery of admissible evidence. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 12:**

All documents regarding when Baker Botts was first engaged by, or first communicated with, the Audit Committee of the Board of Directors of i2 regarding the subject matter of the investigation.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence. The Audit Committee further objects because the phrase "subject matter of the investigation" is vague and ambiguous. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 13:**

All documents evidencing communication with or provided to Deloitte & Touche regarding the investigation or restatement.

**RESPONSE:**

The Audit Committee objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence; not all documents relating to the investigation or restatement are relevant to this case. The Audit Committee further objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects to this request because Deloitte, the Company, and the Audit Committee already produced to the SEC, and Brady therefore has access to, any discoverable documents (including, for example, Company documents Deloitte reviewed). Brady should seek those documents from the SEC. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 14:**

All notes of any member of the Audit Committee of the Board of Directors of i2 regarding the subject matter of the investigation.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from

discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence.   The Audit Committee further objects to this request because Brady has access to any discoverable documents through the SEC, the plaintiff in this case.    The Audit Committee further objects because the phrase "subject matter of the investigation" is vague and ambiguous.  The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 15:**

All documents concerning communication among the audit committee members or between the audit committee and i2's auditors or management regarding the investigation or restatement.

**RESPONSE:**

The Audit Committee objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence; not all documents relating to the investigation or restatement are relevant to this case.   The Audit Committee further objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement.   The Audit Committee further objects to this request because Deloitte, the Company, and the Audit Committee already produced to the SEC, and Brady therefore has access to, any discoverable documents.  Brady should seek these documents from the SEC.  The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 16:**

All documents concerning Brady, including any email correspondence, internal memoranda, or other communications.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all "documents concerning Brady" are relevant to this case. The Audit Committee further objects because responding to this request would place an undue burden on the Audit Committee and its representatives.   The Audit Committee further objects to this request because it has provided to, and Brady thus has access to, any relevant and discoverable documents through the SEC, the plaintiff in this case.  The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 17:**

All documents concerning any internal investigation at i2, including the internal investigation by i2's finance department between October 2002 and February 2003.

**RESPONSE:**

The Audit Committee objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all materials relating to "any internal investigation at i2" are relevant to this case. The Audit Committee further objects to this request as harassing and because responding would be unduly burdensome. The Audit Committee further objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects to this request because Brady has access to any discoverable information through the SEC, the plaintiff in this case. Finally, this request is vague and does not identify with sufficient specificity the documents it seeks. The Audit Committee will not produce documents in response to this request.

**REQUEST NO. 18:**

All documents concerning i2's red yellow and green reports.

**RESPONSE:**

The Audit Committee objects to this request because it calls for materials protected from discovery by the attorney-client and work-product privileges and a confidentiality agreement. The Audit Committee further objects because this request is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad; not all materials "concerning i2's red, yellow, and green reports" are relevant to this case. The Audit Committee further objects to this request as harassing and because responding would be unduly burdensome. The Audit Committee further objects to this request because Brady has access to any discoverable information through the SEC, the plaintiff in this case. Finally, this request is vague and does not identify with sufficient specificity the documents it seeks. The Audit Committee will not produce documents in response to this request.

Dated:  May 3, 2006

Respectfully submitted,

BAKER BOTTS L.L.P.

Timothy S Durt in p. SLC

Timothy S. Durst
State Bar No. 00786924
Stuart L. Cochran
State Bar No. 24027936
2001 Ross Ave.
Dallas, TX 75201
P:  (214) 953-6500
F:  (214) 953-6503

ATTORNEYS FOR THE
i2 AUDIT COMMITTEE

## CERTIFICATE OF SERVICE

I certify that on May 3, 2006, I served this document by certified mail to:

Michael J. Biles
Akin Gump Strauss Hauer & Feld LLP
300 W. 6th St., Suite 2100
Austin, TX 78701

Toby M. Galloway
Securities and Exchange Commission
Fort Worth District Office
801 Cherry Street, Suite 1900
Fort Worth, Texas  76102

Timothy S. Durst

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE
COMMISSION
§
§
§
§
§
§
§

NO. 3:05-1416

v.

GREGORY BRADY, ET. AL.

## BAKER BOTTS L.L.P.'S OBJECTIONS TO SUBPOENA DUCES TECUM

Baker Botts L.L.P. serves these objections to the subpoena issued on April 19, 2006 by

Akin Gump Strauss Hauer & Feld LLP on behalf of Gregory Brady (collectively "Brady") and

states as follows:

### OBJECTIONS APPLICABLE TO THE ENTIRE SUBPOENA

1.  Baker Botts objects to Brady's apparent attempt to use the subpoena to disguise his
    improper and concealed retention of the Company's privileged information.  In July
    2002, in his capacity as a member of the Company's Board of Directors, Brady was
    provided with a copy of Baker Botts' July 2002 report to the Audit Committee.  The
    report indicated that it was "a confidential document that is subject to the attorney-client
    communication privilege and is to be considered work product," and it was expected that
    Board members would maintain the Company's privileges.

    After Brady left the Company, counsel for the Audit Committee verbally and repeatedly
    asked Brady to return the report.  The Company then discovered that, without the
    Company's authorization, Brady had provided to the SEC a copy of the report.  The SEC
    notified the Company of the production and returned the materials to counsel for the
    Company and the Audit Committee.  The SEC acknowledged that the materials were
    marked as privileged and that the SEC had not read them, other than to identify them.

    In July 2004, Brady assured the Company in writing that he had returned the original and
    all copies of the report and its exhibits.  On May 2, 2006, the Company learned that
    Brady apparently had kept a copy of the materials despite his previous representations to
    the contrary.

    The subpoena appears to have been served for the improper purpose of disguising the fact
    that Brady improperly (and secretly) retained a copy of the report.