## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES & EXCHANGE, | § | |
| COMMISSION | § | |
|       Plaintiff, | § | |
| | § | Civil Action No. 3:05-CV-1416-M |
| v. | § | |
| | § | |
| GREGORY A. BRADY, et al., | § | |
| | § | |
|       Defendant. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's *Orders of Reference*, filed May 26, 2006 and June 1, 2006,

the following pleadings are before the Court for determination:

1. *Defendant Gregory A. Brady's Motion to Compel the Production of Documents of the Audit Committee of i2 Technoligies, Inc. and Baker Botts L.L.P., Request for In Camera Review, and Supporting Brief* ("Mot. to Compel") and *Appendix to Defendant Gregory A. Brady's Motion to Compel the Production of Documents of the Audit Committee of i2 Technoligies, Inc. and Baker Botts L.L.P., Request for In Camera Review, and Supporting Brief,* both filed May 26, 2006;

2. *Motion of the i2 Audit Committee and Baker Botts for Protection and Return of Privileged Materials and Brief in Support* ("Mot. for Protection") and *Appendix in Support of the i2 Audit Committee and Baker Botts' Motion for Protection and Return of Privileged Materials and Brief in Support,* both filed May 31, 2006;

3. *Defendant Gregory A. Brady's Response to the i2 Audit Committee and Baker Botts' Motion for Protection and Return of Privileged Materials* ("Resp. to Mot. for Protection") and *Appendix in Support of Defendant Gregory A. Brady's Response to the i2 Audit Committee and Baker Botts' Motion for Protection and Return of Privileged Materials,* both filed June 15, 2006;

4. *Response of the i2 Audit Committee and Baker Botts to Brady's Motion to Compel and Brief in Support* ("Resp. to Mot. to Compel") and *Appendix in Support of Response of the i2 Audit Committee and Baker Botts to Brady's Motion to Compel and Brief in Support*, both filed June 15, 2006;

5. *Defendant Gregory A. Brady's Motion for Leave to File a Supplemental Brief and Appendix in Support of Motion to Compel the Production of Documents of the Audit Committee of i2 Technologies, Inc. and Baker Botts L.L.P.*, filed July 25, 2006; and

6.   *Response to Brady's Motion for Leave to File a Supplemental Brief*, and *Appendix in Support of Response to Brady's Motion for Leave to File a Supplemental Brief*, both filed August 7, 2006.

A hearing on the matter was held on June 21, 2006.  After consideration of the pleadings, evidence, oral argument, and applicable law, the Court determines that *Defendant Gregory A. Brady's Motion to Compel the Production of Documents of the Audit Committee of i2 Technoligies, Inc. and Baker Botts L.L.P., Request for In Camera Review, and Supporting Brief* should be **DENIED**, that *Motion of the i2 Audit Committee and Baker Botts for Protection and Return of Privileged Materials and Brief in Support* should be **GRANTED**, and that *Defendant Gregory A. Brady's Motion for Leave to File a Supplemental Brief and Appendix in Support of Motion to Compel the Production of Documents of the Audit Committee of i2 Technologies, Inc. and Baker Botts L.L.P.* should be **GRANTED**.

## I.  FACTUAL BACKGROUND

Defendant Gregory A. Brady ("Brady") is a former president, CEO, and director of i2 Technologies ("i2"), a billion dollar company that provides software for the supply chain management industry.  (Compl. at ¶¶ 8, 12).  The Securities and Exchange Commission ("SEC") brought suit against Brady and two other former officers of i2, alleging, *inter alia*, that Brady caused i2 to report revenues on software sales in violation of Generally Accepted Accounting Principles between 1999 and 2001.  (*See* Compl. at ¶¶ 12-129).

### A.   *Phase I Investigation*

In April 2001, a series of shareholder lawsuits were filed against i2.  (Resp. to Mot. to Compel (June 15, 2006 Aff. of Craig N. Adams at ¶ 3)).  Subsequently, two former i2 officers contacted the company and made allegations of wrongful conduct, including improper accounting

and revenue recognition in financial statements, inadequate financial controls, and gross negligence or potential fraud. (App. to Mot. to Compel, Ex. 10 at 238). The former officers also threatened to bring their own litigation related to those issues. (App. to Resp. to Mot. to Compel (June 15, 2006 Aff. of Craig N. Adams at ¶ 3)).

Because of the looming shareholder lawsuits and the threats of litigation by the former i2 officers, i2's Audit Committee hired the law firm of Baker Botts to conduct an internal investigation and give legal advice concerning the potential claims against i2. (Resp. to Mot. to Compel at 3). Baker Botts then engaged the accounting firm of KPMG, LLP to assist in the investigation. (App. to Resp. to Mot. to Compel (June 15, 2006 Aff. of Craig N. Adams at ¶ 6)). During the course of the investigation, Baker Botts attorneys reviewed approximately 40,000 pages of documents and conducted 70 interviews with current and former i2 employees and representatives of Arthur Andersen, i2's previous independent auditor. (Mot. to Compel at 4).

Upon completion of Baker Botts' investigation into the initial allegations of i2 misconduct, Baker Botts submitted a lengthy detailed report ("the Phase I Report"), a part of which was created by KPMG, to i2's board. *Id.* As a member of i2's Board of Directors, Brady was provided with a copy of the Phase I Report. (Mot. for Protection at 1.) Based on the results of the investigation, i2's board of directors concluded that no adjustments were necessary to i2's prior revenue recognition, that there were no indications of material deficiencies in i2's financial controls, and that there were no indications to support the allegations concerning gross negligence or potential fraud. (App. to Mot. to Compel, Ex. 10 at 238).

B.      *Phase II Investigation*

In August and September 2002, the former officers brought additional allegations of improper revenue recognition.  (App. to Resp. to Mot. to Compel (June 15, 2006 Aff. of Craig N. Adams at ¶ 7)).  These additional allegations prompted i2's board to resume the investigation ("Phase II").  (App. to Resp. to Mot. to Compel (i2 Form 10-Q for period ending September 30, 2002)).  As a result of the additional allegations, i2 decided to notify the SEC of the ongoing investigation, and thereafter, the SEC opened an informal inquiry.  (App. to Resp. to Mot. to Compel (September 19, 2005 Aff. of Craig N. Adams at ¶ 9)).

According to an October 17, 2002 in-house memorandum of Deloitte and Touche, i2's new independent auditors, Baker Botts attorneys met with two Deloitte and Touche partners on October 14, 2006, to discuss the investigation.  (App. to Mot. to Compel, Ex. at 337).  The memorandum specifically states that the Deloitte partners reviewed the Phase I Report with the Baker Botts attorneys, and that the KPMG portion of the Phase I Report had been disclosed to Deloitte for review the previous week.  *Id*. at 338.  The meeting concluded with a conference call between the Deloitte partners, the Baker Botts attorneys, and i2 management to discuss the additional allegations and the need to update the Phase I Report.  *Id*.

Subsequently, the i2 Audit Committee engaged Baker Botts to begin the second portion of the internal investigation regarding revenue recognition.  (Mot. to Compel at 6).  i2 also requested that Deloitte and Touche re-audit their financial statements for fiscal years 2000 and 2001; the audit results subsequently led to i2's decision to restate those financial statements.  (Resp. to Mot. to Compel at 7).

During Phase II, Baker Botts attorneys reviewed additional documents and conducted

additional interviews of current and former i2 officers, directors, and employees. *Id.* The Baker

Botts lawyers prepared summaries of their observations and thoughts with respect to each interview

and stamped each written summary as privileged and confidential. *Id.* In June 2003, Baker Botts

completed the Phase II portion of the investigation and communicated its findings and legal advice

to i2's Board and Audit Committee by way of a confidential oral and power point presentation.

(App. to Resp. to Mot. to Compel (September 19, 2005 Aff. of Craig N. Adams at ¶ 14)).

### C.     *SEC Investigation*

As a result of the SEC's informal inquiry into the alleged i2 improprieties, the SEC

concluded that a formal investigation was warranted. (App. to Resp. to Mot. to Compel (September

19, 2005 Aff. of Craig N. Adams at ¶ 12)). i2 cooperated with the investigation and entered into a

confidentiality agreement with the SEC wherein the SEC agreed to maintain the confidentiality of

any materials provided to it by i2 and its Audit Committee throughout the investigation. *Id.* at ¶ 13.

In July 2003, Baker Botts reviewed the results of the Phase II investigation with the SEC and

presented the same confidential oral and power point presentation that had been shown to the Audit

Committee in June 2003. *Id.* at ¶ 15. Baker Botts also provided the SEC copies of the interview

observations and summaries, exhibits used during witness interviews, and other documents

uncovered during its Phase II investigation. *Id.* at ¶ 16. However, Baker Botts did not produce any

information concerning the Phase I investigation, including the Phase I Report. (Mot. to Compel

at 7).

During the SEC's formal investigation, it served a subpoena duces tecum on Brady. (App.

to Mot. to Compel, Ex. 15 at 261). In response, Brady produced documents that he had obtained

while on i2's board, including the Phase I Report, because he believed that the Report would

exculpate him from any liability.  (Mot. to Compel at 8).  Upon receipt of the Phase I Report, the

SEC noticed that it bore a stamp claiming attorney-client communication and work product, so the

SEC  forwarded the Phase I Report to Baker Botts without reading it.  (App. to Mot. to Compel, Ex.

17 at 265).  Baker Botts, in turn, demanded that Brady and his counsel return all copies of privileged

documents that Brady had received while on i2's board and retained.  (Mot. to Compel at 8-9).

While not agreeing that the Phase I Report was subject to any privilege, Brady's attorney acquiesced

to Baker Botts' request and returned the Phase I Report.  (App. to Mot. for Protection at 8.)  Brady's

attorney represented that any remaining copies of the Report retained by other counsel at the firm

would be destroyed.  *Id.*  However, one of the copies of the Phase I report was not destroyed and

remains in the possession of Brady's counsel.

**D.     *Documents at Issue***

In the motion to compel, Brady moves to compel production of the following categories of

documents:

> 1.  All documents produced or shown to government investigators, including representatives
> of the SEC, Department of Justice, U.S. Postal Inspector, or any other government entity in
> response to any formal or informal request concerning i2 or any of its current or former
> officers, directors, or employees.
>
> 2.  All correspondence with the SEC, Department of Justice, or U.S. Postal Inspector
> concerning i2 or any of its current or former officers, directors, or employees.
>
> 3.  The Report to the Audit Committee of the Board of Directors of i2 dated July 3, 2002 (the
> Phase I Report).
>
> 4.  All documents reviewed or relied upon in the preparation of the Report
>
> 5.  All transcripts, interview memoranda or other summaries, and documents used as exhibits
> in any interview by the Audit Committee, Baker Botts, KPMG LLP, or Deloitte and Touche
> LLP with any current or former i2 employee, officer, director, customer, prospective
> customer, supplier, consultant, auditor, accountant, attorney or agent concerning defendants,
> i2's products, i2's sales practices or i2's accounting, including any written acknowledgments

or clarifications received from the witness.

6. All documents reviewed or prepared by KPMG LLP in connection with the Audit Committee's investigation.

Although the above categories are not in the format used in the subpoena at issue, at the hearing the parties agreed that use of these categories would be the most efficient method of dealing with the motion to compel. At the June 21, 2006 hearing, the attorney for i2 and Baker Botts amended his response to the requests for documents in Category 1 to state that all responsive documents had been produced with the exception of power point presentations, which would shortly be produced. (Tr. of June 21, 2006 hrg. at 51-52.) Therefore, Brady's counsel stated that there was no need for a court ruling on Category 1. *Id.* at 52. Accordingly, the only documents subject to the motion to compel to be considered by the Court are those in Categories 2 through 6.

In the motion for protective order, i2 and Baker Botts seek the return of the Phase I Report in Brady's possession (except for the KPMG portion that was produced by Deloitte & Touche to the SEC, D&T 42608-42619). Brady submitted for *in camera* review the Phase I Report, the Baker Botts power point presentation originally shown to the Audit Committee in June 2003 and later given to the SEC, and a Baker Botts e-mail string.

## II. ANALYSIS

### A.   *Relevance*

i2 and Baker Botts object to Category 3, production of the Phase I Report, on the basis of relevance. The burden is on the "party who opposes its opponent's request for production to 'show specifically how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive.'" *Merrill v. Waffle House*, Inc. 227 F.R.D. 475, 477 (N.D. Tex. 2005) (*quoting McLeod, Alexander, Powel and Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990)).

Pursuant to FED. R. CIV. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  "'Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party.'"  *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (*quoting Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)).  Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed.  *Id.*  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under FED.R.CIV.P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Id.* (*quoting Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

Here, i2 and Baker Botts argue that the Phase I Report is not relevant to Brady's case because Brady could not have relied on the Report since it did not exist when he committed the alleged accounting improprieties.  However, the SEC's complaint against Brady includes a myriad of improper accounting and revenue recognition acts conducted during 1999 and 2001.  This is the same time period reviewed by Baker Botts during Phase I, which prompted i2 to state in its September 30, 2002 Form 10-Q that no adjustments were necessary to i2's prior financial

statements.  Because relevancy is to be construed broadly, this court finds that there is a possibility that the discovery sought could be relevant to Brady's defense.  Baker Botts and i2 have failed to meet their burden, and this objection is overruled.

### B.      *Overbreadth and Undue Burden*

i2 and Baker Botts also argue that the subpoena at issue is overbroad and unduly burdensome in totality.  (Resp. at 8-10.)  A party opposing discovery on this basis bears the burden of showing why discovery should be denied.  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  In determining whether a subpoena us unduly burdensome, courts consider "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *Id.*  Another factor to consider is whether subpoena was issued to a non-party to the litigation and the expense and inconvenience of compliance to the non-party.  *Id.*  A facially overbroad subpoena is unduly burdensome*. Id.*  The court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party. *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (citing *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)).  Modification of a subpoena is preferable to quashing it.  *Id*. (citing *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994)).

In order to satisfy its burden, the objecting party must make a specific, detailed showing of how a request is burdensome.  *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000).  A mere statement by a party that a request is "overly broad and unduly burdensome" is not adequate to voice

a successful objection. *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511-12 (N.D. Ia. 2000). Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request. *Harding v. Dana Transport Inc.*, 914 F. Supp. 1084, 1102 (D. N.J. 1996). "A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Waddell & Reed Financial, Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004); *see also U.S. ex rel. Fisher v. Network Software Associates*, 217 F.R.D. 240, 246 (D.D.C. 2003); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000).

In support of their assertion that the subpoena is overbroad and unduly burdensome, i2 and Baker Botts provide affidavits of two Baker Botts associates. (App. to Resp. at 30-34.) Therein, Gail Foster states that Baker Botts IT staff captured all documents from the firm's document management system using billing numbers for various i2 matters as well as the email boxes of all individuals who billed time to i2 matters. *Id.* at 30. Foster estimates that the amount of potentially responsive electronic data amounts to 32,222,000 pages. *Id.* at 31. Stuart L. Cochran states that Baker Botts has 226 boxes containing evidence produced to the SEC, among other internal working files, and that individuals at the firm have additional personal files as well. *Id.* at 32-33. Cochran estimates that 226 hours to review the files for responsiveness and privilege. *Id.* at 33. In addition, Cochran estimates that 16,111 hours would be required to review the electronic data for responsiveness and privilege. *Id.* at 33-34.

At the hearing, i2 and Baker Botts made specific representations as to the burdensomeness

of producing the documents sought in Category 2.  (Tr. at 59-61.)  With respect to Category 2, counsel for i2 and Baker Botts represented that the vast majority of responsive documents were in the possession of the SEC and had either already been produced by the SEC to Brady, or would shortly be produced by the SEC.  *Id.* at 53-54.  Brady's counsel stated that the only documents at issue were transmittal letters or other correspondence.  *Id.* at 58.  However, according to counsel for i2 and Baker Botts, searching Baker Botts' electronic data for such documents would involve a substantial burden.  *Id.* at 60.  Because i2 and Baker Botts have demonstrated that it would be unduly burdensome for them to produce the documents sought in Category 2, and because the vast majority of the responsive documents, if not all, are in the possession of the SEC, a party to this case, the Court sustains the objection to Category 2.

## C.      *Attorney-Client Privilege*

i2 and Baker Botts contend that all of the discovery sought in Brady's motion is protected by the attorney-client privilege and thus not discoverable.  Brady contends that documents in Categories 3 and 4 are not subject to the attorney-client privilege and that any privilege as to documents responsive to other categories has been waived.

### 1.      Existence of the privilege

Brady alleges that the Phase I Report was prepared in the context of rendering business advice, rather than legal advice.  (Mot. to Compel at 13-14.)  For this reason, Brady asserts that the attorney-client privilege does not apply to Categories 3 and 4.  *Id.*  The attorney-client privilege protects from disclosure confidential communications made to obtain a lawyer's professional advice and assistance.  *Dabney v. Investment Corp. of America*, 82 F.R.D. 464, 465 (E.D. Pa.1979). The exercise of the attorney-client privilege is a "question of fact, to be determined in the light of the

11

purpose of the privilege and guided by judicial precedents." *In re Auclair*, 961 F.2d 65, 68 (5th Cir. 1992).   In order to establish the attorney-client privilege, Defendant must show that all of the following conditions have been met: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication was acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of serving primarily either (i) an opinion on law or (ii) legal service or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client.   *U.S. v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D. Tex. 1993).   "The attorney-client privilege protects two related, but different, communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client."   *U.S. v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D. Tex. 1993). The privilege applies even when a client is a corporation.   *Upjohn Co. v. U.S.*, 449 U.S. 383, 390 (1981). However, the attorney-client privilege does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney.   *Id.* at 395-96.   The burden is on the party asserting the privilege to demonstrate how each document satisfies all the elements of the privilege.   *Hodges, Grant & Kaufmann v. U.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

In asserting the privilege, i2 and Baker Botts claim that i2 hired Baker Botts to deliver legal advice regarding the former officers' allegations of accounting improprieties and threats of litigation. They rely on *Diversified Indus., Inc. v. Meredith*, which quotes Wigmore on Evidence and states that

"[i]t is not easy to frame a definite test for distinguishing legal from nonlegal advice. . . . [T]he most that can be said by way of generalization is that a matter committed to a professional legal adviser is prima facie so committed for the sake of the legal advice which may be more or less desirable for some aspect of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice." 572 F.2d 596, 610 (8th Cir. 1977) (quoting 8 Wigmore, Evidence § 2296 (McNaughton rev. 1961)).  Additionally, i2 and Baker Botts contend that even though the Phase I Report includes some business considerations, the primary purpose of the Report was to provide legal advice.

An *in camera* review of the Phase I Report revealed that it is laced with underlying facts, legal opinions, and business advice.  Additionally, the fact that the Report was the result of many i2 officer and director interviews with Baker Botts leads the court to conclude that the interviews were confidential communications between the corporate client and its counsel.  The court also finds that the presentation of the Phase I Report from Baker Botts to the i2 Audit Committee was, in essence, a written communication and the equivalent of a confidential communication between an attorney and his client.  Thus, i2 and Baker Botts have met their burden to establish attorney-client privilege as to Categories 3 and 4.  In his motion, Brady does not argue that the attorney-client privilege is inapplicable to Categories 5 and 6.

**2.    Waiver of attorney-client privilege as to Phase I Report**

Brady contends that even if the Phase I Report is privileged, i2 and Baker Botts waived the privilege by intentionally disclosing it to third parties.  (Mot. to Compel at 15-20.)  Waiver of a privilege may occur when there is a breach of confidentiality.  *See Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc*., 218 F.R.D. 125, 134 (E.D. Tex. 2003).  For example, disclosure of attorney-

13

client communications to a third party lacking a common legal interest will result in a waiver of the attorney-client privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992); *Ferko*, 218 F.R.D. at 134. Moreover, the confidentiality of a client's communications may be compromised either through the publication of evidence of the communications themselves or through the publication of evidence of attorney statements or documents that disclose the client's confidential communications. *Indus. Clearinghouse, Inc. v. Browning Mfg.*, 953 F.2d 1004, 1007 (5th Cir. 1992). Even disclosure of privileged information directly to a client's independent auditor, accountant, or tax analyst destroys confidentiality. *See U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1983); *see also Ferko*, 218 F.R.D. at 134-35.

In this case, it appears that i2 and Baker Botts made significant disclosures of privileged information to third parties who lacked a common legal interest. First, the October 17, 2002 Deloitte and Touche memorandum provides evidence that on October 14, 2002, two of their partners met with Baker Botts attorneys to discuss the investigation and review the Phase I Report. Additionally, the KPMG portion of the Phase I Report was disclosed to Deloitte and Touche for review the previous week. Further, the meeting concluded with a conference call with i2 management to discuss the additional allegations and the need to update the Phase I Report. Federal case law makes it clear that disclosure of confidential communications or documents to auditors for purposes other than seeking legal advice destroys confidentiality and with it, the right to claim the attorney-client privilege. *El Paso Co.*, 682 F.2d at 539-41; *Ferko*, 218 F.R.D. at 134. For this reason, the Court concludes that due to the disclosure of the privileged Phase I Report to Deloitte and Touche, and confidential communications between i2 and Baker Botts while Deloitte and Touche partners were present, attorney-client privilege over the Phase I Report, the subject of Category 3, has been

waived.

### 3.    Selective waiver of attorney-client privilege as to Phase II materials

Brady asserts that materials related to the Phase II investigation were provided to the SEC, thereby waiving the attorney-client privilege as to Categories 5 and 6.  (Mot. to Compel at 15-16.) With regard to the Phase II materials, i2 and Baker Botts concede that they disclosed to the SEC the same oral report and power point presentation given to the Audit Committee concerning Phase II, in addition to interview observations and summaries, exhibits used during witness interviews, and other documents uncovered during its Phase II investigation.  Indeed, they state that pursuant to a confidentiality agreement with Brady, he will receive all of the materials presented to the SEC. (Resp. to Mot. to Compel at 15-16).  i2 and Baker Botts contend that despite the disclosure of Phase II materials to the SEC, they did not waive the attorney-client privilege; however, to the extent they have waived attorney-client privilege, they urge the court to adopt the Eighth Circuit's selective waiver doctrine.

In *Diversified Indus., Inc. v. Meredith* 572 F.2d 596 (8th Cir. 1977), the Eighth Circuit established the selective waiver doctrine, which provides that a party may waive the attorney-client privilege to governmental agencies conducting an investigation without waiving the privilege to others.  *See* 572 F.2d at 611.  The Eighth Circuit reasoned that selective waiver was necessary because it encourages "corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders, and customers."  *Id.*

The Fifth Circuit has not yet considered this doctrine.  However, an overwhelming amount of authority has found this argument wholly unpersuasive and rejected the selective waiver doctrine. *See e.g. In re Qwest Commc'n Int'l, Inc. v. New England Health Care Employees Pension Fund*, 450

F.3d 1179, 1201 (10th Cir. 2006); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir. 2002); *Westinghouse Elec. Corp. v. Republic of Phillipines*, 951 F. 2d 1414, 1424-25 (3rd Cir. 1991); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1417 (Fed. Cir. 1997); *U.S. v. Mass. Inst. of Tech*., 129 F.3d 681, 686 (1st Cir. 1997); *In re Martin Marietta Corp*., 856 F.2d 619, 623-24 (4th Cir. 1988); *In re John Doe Corp*., 675 F.2d 482, 489 (2d Cir. 1982); *Permian Corp. v. U.S.*, 665 F.2d 1214, 1220 (D.C. Cir. 1981).   In *Permian*, the D.C. Circuit stated that "[t]he client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit."   *Permian*, 665 F.2d at 1222.   Rather, "the attorney-client privilege should be available only at the traditional price: a litigant who wishes to assert confidentiality must maintain genuine confidentiality."   *Id*.   In *Martin*, the Fourth Circuit stated that "selective waiver does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure to government agencies, thereby extending the privilege beyond its intended purpose."   *Martin Marietta*, 856 F.2d 623-24.

As noted, the Fifth Circuit has yet to adopt the selective waiver doctrine.   Moreover, this court is persuaded by the reasoning of the great weight of authority which has declined to adopt the selective waiver doctrine.   Therefore, the court finds that i2 and Baker Botts waived the attorney-client privilege as to Categories 5 and 6 by disclosing Phase II privileged information to a third-party.

### 4.   Subject matter waiver of attorney-client privilege

Brady argues that i2 and Baker Botts' waiver of attorney-client privilege as to the Phase I

Report and the Phase II investigation extends to the entire subject matter related to the disclosures. (Mot. to Compel at 16-18.)

The "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel* Corp., 197 F.3d 200, 208 (5th Cir. 1999). Moreover, waiver of an attorney-client communication waives the privilege as to all other communications relating to the same subject matter. *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, *7 (W.D. La. June 18, 2003). Here, Brady disclosed the Phase I Report, which summed up Baker Botts' entire Phase I investigation, to Deloitte and Touche. Additionally, they disclosed to the SEC the same oral report and power point presentation given to the Audit Committee concerning the ultimate findings of Phase II, interview observations and summaries, and exhibits used during witness interviews. Based on that evidence, the court finds that these disclosures amount to a significant portion of attorney-client privileged information, and thus, the waiver of attorney-client privilege extends to all responsive documents relating to the Phase I and Phase II subject matter. Accordingly, the attorney-client privilege has been waived as to all documents responsive to Categories 3, 4, 5, and 6.

**D.     *Work Product Doctrine***

i2 and Baker Botts argue that the investigation materials sought in Brady's motion to compel are still protected from discovery by the work product doctrine because they concern mental impressions, conclusions, opinions, or legal theories. (Resp. to Mot. to Compel at 21-22.) Waiver of attorney-client privilege does not necessarily mean that work product immunity over the same documents has also been waived. *See Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy*, 2004 WL 1237450, *8 (E.D. La. June 2, 2004); *In re Broadcom Corp. Securities Litigation*, 2005

WL 1403513 *3 (C.D. Cal) (citing *Handgards , Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976)); *Key vs. U.S. Bancorp Disability Income Plan*, 1988 WL 114929 *3 (D. Or. Oct. 27, 1988). Thus, this Court must now consider whether the materials sought are still protected by the work product doctrine.

The work product doctrine protects from discovery materials prepared by an attorney in anticipation of litigation. FED. R. CIV. P. 26(b)(3); *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979). Qualified protection extends to documents and tangible things including a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements. *Ferko*, 218 F.R.D. at 136 (citing *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). The party who asserts work product protection must show that the materials warrant work product protection by establishing the following elements: (1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's representative; (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *Id.* The parties do not dispute elements (1) and (3); thus i2 and Baker Botts must prove elements (2) and (4) to assert opinion work product protection over the documents at issue.

### 1.   <u>Anticipation of litigation</u>

i2 and Baker Botts argue that the entire investigation (Phase I and Phase II) was primarily conducted as a result of the allegations of accounting impropriety, and thus everything produced was in anticipation of litigation. The law of our circuit is that the privilege can apply where litigation

is not imminent, "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *El Paso*, 682 F.2d at 542. Here, the affidavits establish that there was a pending shareholder lawsuit, and that two former officers had also threatened litigation. As a result, i2 hired outside counsel to investigate the officers' allegations and to advise i2 of its potential liabilities. For these reasons, the Court finds sufficient evidence that the investigation documents in question were created in anticipation of litigation.

### 2.     Ordinary vs. Opinion Work Product

i2 and Baker Botts next argue that the documents sought by Brady are opinion work product and are not discoverable. The Federal Rules of Civil Procedure protects as work product documents "prepared in anticipation of litigation or for trial." FED. R. CIV. P. 26(b)(3). If the party seeking discovery can show that it has "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means," the court may order production of work product. *Id.* However, even when the requisite showing has been made, the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

Many courts have defined this second category of work product as "opinion work product." *See e.g. In re Qwest Commc'ns Int'l*, 450 F.3d 1179, 1186 (10th Cir. 2006); *In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006)*; Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002); *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000); *Better Gov't Bureau v. McGraw*, 106 F.3d 582, 607 (4th Cir. 1997); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985). The Fifth Circuit has recognized

"opinion work product" and noted that "some courts have provided an almost absolute protection

for such materials." *In re Int'l Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.

1982) (citing *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977); *In re Doe*, 662 F.2d 1073, 1080 (4th

Cir. 1981)). *See also Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 441 (E.D. Tex. 2003),

*vacated in part on other grounds,* 2003 WL 21911333(5th Cir. Jul. 25, 2003) ("A court cannot order

production of opinion work-product absent a showing of even higher necessity, which is a rare

situation if it exists at all."); *Conoco Inc. v. Boh Bros. Const. Co.,* 191 F.R.D. 107, 118 (W.D .La.

1998) ("[O]pinion work product becomes subject to disclosure when (1) 'mental impressions are at

issue in a case and the need for the material is compelling' and (2) pursuant to the crime-fraud

exception to discovery.") (internal citations omitted).

Examples of opinion work product include notes and memoranda created by an attorney or

his agent, regarding witness interviews, because they contain mental impressions. *Dunn v. State*

*Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *Baker*, 209 F.3d at 1054. Investigatory

reports that contain summaries of witness interviews are also opinion work product because the

reports are "suffused" with the investigator's mental impressions and conclusions. *Smith v.*

*Diamond Offshore Drilling, Inc*., 168 F.R.D. 582, 585 (S.D. Tex. 1996). Case reserve figures and

audit letters are considered opinion work product. *Ohio Management, LLC v. James River Ins. Co*.,

2006 WL 1985962, *2, n.10 (E.D. La. 2006); *Southern Scrap Material Co. v. Fleming*, 2003 WL

21474516, *9 (E.D. La. June 18, 2003). Additionally, documents, including business records, that

were specifically selected and compiled by a party or its representative in preparation for litigation

are opinion work product because the mere acknowledgment of their selection would reveal mental

impressions concerning the potential litigation. *See Petersen v. Douglas County Bank & Trust Co.*,

967 F.2d 1186, 1189 (8th Cir. 1992).

*In camera* review of the Phase I report (Category 3) reveals that it contains information obtained from numerous Baker Botts interviews with i2 officers, directors, and employees. It is also "suffused" with legal conclusions and mental impressions regarding the interviews as well as legal advice regarding the former officers' allegations. *Smith*, 168 F.R.D. at 585 (S.D. Tex. 1996).

As for the documents reviewed or relied upon in the preparation of the Report (Category 4) and all of the documents reviewed or prepared by KPMG in connection with the Audit Committee's investigation (Category 6), those documents were specifically selected by Baker Botts or its agent, KPMG, to analyze the allegations and create the Phase I Report. i2 and Baker Botts argue, and the Court agrees, that the production of these documents would reveal the mental impressions of both Baker Botts and its agent, KPMG. Thus, the Court finds that these documents are protected as opinion work product. *See Petersen,* 967 F.2d at 1189.

Additionally, request for Category 5 requests all transcripts, interview memoranda or other summaries, and documents used as exhibits in any interview. The breadth of these particular documents seem to be documents that Baker Botts, its agent, its client, or its client's agent specifically selected as part of their strategy in interviewing people during the investigation. Similar to Categories 4 and 6, the selection of these documents involved strategy and mental impressions regarding potential litigation. Thus, the court agrees with i2 and Baker Botts that the documents responsive to Categories 3, 4, 5, and 6 constitute opinion work product and are not discoverable.

### 3.     Substantial need and undue hardship/compelling need

i2 and Baker Botts next assert that because the documents sought are opinion work product, they are not discoverable without a showing of compelling need by Brady. If a party meets its

21

burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced. *Ferko*, 219 F.R.D. at 396. If the materials are ordinary work product then a court may still compel discovery if the party seeking the materials demonstrates a substantial need for the information and an inability to obtain the substantial equivalent without undue hardship. *In re Int'l Systems & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). The Court notes that work product immunity only protects the documents and not the underlying facts, thus, if a party can procure the information sought through other avenues, such as depositions, then undue hardship has not been shown. *Id*. A party may demonstrate undue hardship if a witness cannot recall the events in question, or is unavailable for deposition; however, broad unsubstantiated assertions of unavailability or faulty memory are insufficient to show undue hardship. *Id*. Courts may also factor-in unusual expense into their undue hardship analysis. *Id*. As for substantial need, some cases have found substantial need by emphasizing the importance of the documents themselves. *Id*. at 1241. For example, if material facts known by the opposite party can only be ascertained through privileged documents, then that may suffice as substantial need of those documents. *See id*.

Alternatively, if the materials sought are opinion work product then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information. *Varel v. Banc One Capital Partners, Inc.*, 1997 WL 86457 *5 (N.D. Tex. Feb. 25, 1997); *see In re Int'l Systems & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (implying that discovery of opinion work product requires a higher showing of need than required for an order to produce ordinary work product). As noted above, this heightened burden is nearly an absolute protection of opinion work product. *See Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432,

441 (E.D. Tex. 2003).

Here, Brady failed to argue a compelling need for the documents and only alleged undue hardship and substantial need.  Even assuming that the documents sought were merely ordinary work product, which they are not, Brady still failed to prove undue hardship and substantial need.  Specifically, Brady asserts that the witnesses that were relied upon in the Report would likely take the Fifth Amendment and not answer relevant fact questions in a deposition, but that is mere conjecture.  Undue hardship can be found if witnesses cannot recall the events in question, or are unavailable for deposition, or a showing of unusual expense.  Brady has not provided any evidence of the unavailability of witnesses or evidence of deponents asserting their Fifth Amendment rights.  Additionally, Brady did not assert any argument regarding unusual expense.  As for substantial need, Brady only argues that the discovery sought is of the utmost importance to his case.  Nevertheless, the facts and information that Brady seeks are not exclusively available in the documents he seeks.  Work product immunity only protects the documents, not the underlying facts.  Moreover, Brady is free to discover underlying facts through other avenues of the discovery process, i.e. depositions.  Thus, because Brady failed to argue compelling need and alternatively could not make the lesser showing of undue hardship and substantial need, required of ordinary work product, the Court denies Brady's Motion to Compel with respect to Categories 3, 4, 5 and 6.

### 4.      Waiver of work product immunity

Lastly, Brady argues that i2's disclosure of documents to the government constituted a waiver of work product immunity because the government was either a potential adversary or actual adversary when the documents were exchanged.  Waiver of work product protection only results if the work product is disclosed to an adversary or treated in a manner that substantially increases the

likelihood that an adversary will come into possession of that material. *Ferko*, 218 F.R.D. at 136. Even if confidential work product is produced to a potential adversary under a confidentiality agreement, that will not alter the objective fact that confidentiality has voluntarily been breached. *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 390 (D. N.J. 1990). Under those circumstances, the disclosure is still a waiver of work product immunity. *See Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 67-68 (D.C. Cir. 1984). Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver. *Ferko,* 218 F.R.D. at 136. If the party is successful, waiver of work product immunity will be limited to the materials actually disclosed. *See Varel*, 1997 WL 86457 at *4.

Here, the affidavits show that i2 and Baker Botts were on notice that the SEC had begun an informal investigation that later developed into a formal investigation by March 26, 2003. Yet i2 and Baker Botts still disclosed privileged information and documents to government investigators, albeit under a confidentiality agreement. Nevertheless, this disclosure under a confidentiality agreement constituted a waiver of work product immunity, but waiver is limited to the documents actually disclosed. *See Chubb*, 103 F.R.D. at 67-68. Thus, Brady has met his burden to demonstrate that work product immunity was waived as to all documents produced by i2 and Baker Botts to the government. As noted above, these documents were subject to Category 1 and have already been produced.

Brady argues that the waiver of work product immunity as to the documents disclosed to the SEC warrants full subject matter waiver of all documents pertaining to the investigation. Subject matter waiver of work product immunity occurs when

> . . . it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed, . . . [for example] when the facts

24

relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the same subject matter.

*Id.* at *3 (citing *U.S. v. Nobles*, 422 U.S. 225, 228 (1975); *In re United Mine Workers*, 159 F.R.D. 307, 310-12 (D.D.C. 1992)).

Here, "the facts relevant to a narrow issue" are not in dispute in this case. Additionally, it would not be unfair to limit the waiver to the actual documents disclosed because Brady is not being denied full access to the facts of the investigation. In fact, this Court has already stated that work product immunity protects documents not underlying facts. Brady still has the opportunity to use proper discovery tactics, such as depositions, to ascertain the underlying facts pertaining to both Phase I and Phase II of the investigation. Thus, the disclosure of work product to the SEC does not amount to full subject matter waiver.

## E.      *Return of Phase I Report*

Noting that Brady's counsel retains a copy of the Phase I Report despite earlier representations that all copies had been returned to Baker Botts or destroyed, i2 and Baker Botts request the Court order Brady to return all remaining copies of the Report (except for the KPMG portion that was produced by Deloitte & Touche to the SEC, D&T 42608-42619). (Mot. for Protection at 1.)

"A court's authority to control discovery pursuant to [Fed. R. Civ. P.] 26 is limited to formal discovery." *Lahr v. Fulbright & Jaworski, L.L.P.*, 1996 U.S. Dist. LEXIS 20133, at *7 (July 10, 1996) (Fitzwater, J.). However, "the court's power to remedy unfair litigation practices and preserve judicial integrity is broader in scope." *Id.* "Federal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes." *In re Shell Oil Refinery*, 143

F.R.D. 105, 108 (E.D. La. 1992) *amended* 144 F.R.D. 73 (1992).  Such inherent authority includes the ability to "exclude 'proprietary' documents obtained unfairly and outside the context of formal discovery."[1]  *Lahr*, 1996 U.S. Dist. LEXIS 20133, at *5-6 (citing *Shell Oil*, 143 F.R.D. at 108).

An attorney who receives on an unauthorized basis materials of an adverse party should, upon recognizing the privileged or confidential nature of the materials: (1) either refrain from reviewing such materials or review them only to the extent required to determine how appropriately to proceed; (2) notify the adverse party's attorney that he or she has such materials; and (3) either follow instructions of the adversary's attorney with respect to the disposition of the materials, or refrain from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court.   ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94-382 (1994).

Brady's sole response to the demand to return the Phase I Report is that he contends the Report is not privileged or that the privilege was waived.  (Resp. to Mot. for Protection at 6.)  That contention has been adequately addressed above and Brady's arguments are not persuasive.  The Phase I Report is privileged work product and the privilege has not been waived.  The Court is more concerned about the ethical implications of an attorney failing to alert opposing counsel of his continued possession of a document which had purportedly been destroyed.  Brady's counsel is strongly cautioned that such conduct is inadvisable and reminded that, in the future, the late discovery of privileged documents should be immediately reported to opposing counsel.  If the

---

[1]The majority of the cases which deal with evidence obtained outside of the discovery process consider whether to admit or exclude such evidence at trial.  In this case, the only issue before the Court is whether Brady may maintain possession of and use the Phase I Report, which was obtained outside of the formal discovery process and retained after attorney-client privilege and the work product doctrine had been asserted.  Nevertheless, the foregoing cases are instructive.

existence of privilege is contested, the issue should be promptly brought to the court for determination.  For the foregoing reasons, the motion for protection is granted and Brady is to return all copies of the Phase I Report (except for the KPMG portion that was produced by Deloitte & Touche to the SEC, D&T 42608-42619) in his possession or in the possession of counsel.

### III.  CONCLUSION

For the foregoing reasons, *Defendant Gregory A. Brady's Motion to Compel the Production of Documents of the Audit Committee of i2 Technologies, Inc. and Baker Botts L.L.P., Request for In Camera Review, and Supporting Brief,* filed May 26, 2006 is **DENIED.**

The *Motion of the i2 Audit Committee and Baker Botts for Protection and Return of Privileged Materials and Brief in Support,* filed May 31, 2006, is **GRANTED**.  Within two weeks of the date of this order, Brady's counsel shall return all copies of the Phase I Report in the possession of counsel or Brady (except for the KPMG portion that was produced by Deloitte & Touche to the SEC, D&T 42608-42619).  In addition, Brady's counsel shall certify to the Court, **no later than 5:00 p.m. on October 30, 2006**, that (1) a diligent, good faith effort has been made to identify all persons involved in Brady's representation who have had access to the Phase I Report, either in original, duplicate, or summary form; (2) all such persons have been made aware of this Court's order; (3) all copies of the Phase I Report have been delivered to opposing counsel; and (4) any documents making reference to the privileged contents of the Phase I Report have been destroyed.  This Order shall not be interpreted to require the return or destruction of the copy of the KPMG portion of the "Phase I Report" that was produced by Deloitte & Touche to the SEC (document number D&T 42608-42619) or any work product related to that document prepared by Brady or anyone acting on his behalf (including Brady's counsel, consultants, and expert witnesses).

27

*Defendant Gregory A. Brady's Motion for Leave to File a Supplemental Brief and Appendix in Support of Motion to Compel the Production of Documents of the Audit Committee of i2 Technologies, Inc. and Baker Botts L.L.P.*, filed July 25, 2006, is **GRANTED**.

    **SO ORDERED**, on this 16th day of October, 2006.


            IRMA CARRILLO RAMIREZ
          UNITED STATES MAGISTRATE JUDGE